Bo LIPSEY, et al., Appellants,

v.

**TEXAS DEPARTMENT OF HEALTH, et al., Appellees.**

**No. 3–86–067–CV.**

Court of Appeals of Texas, Austin.

Feb. 25, 1987.

Rehearing Denied April 8, 1987.

Harold F. Curtis, Jr., Greenville, for appellant.

Jim Mattox, Atty. Gen., Ginny Agnew, Asst. Atty. Gen., Austin, for Texas Dept. of Health.

Robert H. Lloyd, Chesley N. Blevins, Lloyd, Gosselink, Ryan & Fowler, P.C., Austin, for North Texas Services, Inc., for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

In March 1984, after notice and hearing, the State Department of Health issued to North Texas Services, Inc. a permit authorizing the company to construct and operate a municipal solid-waste facility in Hunt County. The company's application for the permit had been opposed in the agency proceedings by appellants Bo Lipsey and John D. Phillips who sued for judicial review of the agency order directing that the permit be issued. Appellants have appealed to this Court assigning various errors in the district-court judgment refusing to reverse the order. We will affirm the judgment.

### THE CONTROVERSY

The State Department of Health must approve before construction the plans and specifications for any waste-disposal system intended for public use, unless they are required by law to be approved by the Texas Water Commission. Tex.Rev.Civ. Stat.Ann. art. 4477-7, § 12(a) (Supp.1986). The Department is directed to approve any plans and specifications submitted to it, "provided said plans conform to the water safety and stream pollution laws of this state." Id. One such pollution statute is the Solid Waste Disposal Act, Tex.Rev.Civ. Stat.Ann. art. 4477-7 (1976 & Supp.1986). The stated purpose of the Solid Waste Disposal Act is "to safeguard the health, welfare, and physical property of the people, and to protect the environment, through controlling the management of solid wastes...."

Among other things, art. 4477-7:

(1) designates the Department the "coordinating agency for all municipal solid waste activities other than activities relating to hazardous municipal waste" (§ 3(a));

(2) directs the Department to "seek the accomplishment of the purposes of this Act through the control of all aspects of municipal solid waste management other than management of hazardous munici-pal waste by all practical and economically feasible methods consistent with the powers and duties given the department under this Act and other existing legislation." (§ 3(a));

(3) gives the Department authority to "adopt and promulgate rules consistent with the general intents and purposes of [the] Act, and establish minimum standards of operation for all aspects of the management and control of the solid waste over which it has jurisdiction...." (§ 4(c));

(4) empowers the Department to "require and issue permits authorizing and governing the construction, operation, and maintenance of solid waste facilities used for the storage, processing, and disposal of solid waste" (§ 4(e)); and

(5) assigns the Department large powers of investigation regarding waste disposal systems (§ 4(d), 7).

Pursuant to the authority given the Department, it has promulgated comprehensive regulations governing "Solid Waste Management." 25 Tex.Admin.Code, ch. 325 (1986). Subchapter E of the regulations pertains to the granting of permits by the Department to authorize the construction of municipal solid-waste facilities of the type in issue in the present case—a sanitary landfill where solid waste will be compacted, buried in trenches, and covered with at least six inches of compacted earth not less than once each day of operation.

North Texas Services, Inc. applied to the Department for issuance of a permit in accordance with proposed plans and specifications that accompanied the application. Appellants appeared in the proceeding that followed and opposed the application. After hearing, the Department issued the permit on March 6, 1984, from which action appellants sued for judicial review in a district court of Travis County, as they were privileged to do under the terms of art. 4477-7, § 9. The trial court refused to reverse the order authorizing the permit and this appeal ensued, wherein appellants bring several points of error.

## SURRENDER OF A STATUTORILY ASSIGNED FUNCTION

The site proposed for the facility lies about one-half mile from U.S. Highway 69, connected to that highway by an unimproved public road. The parties to the agency proceeding agreed that in its present state the road will be inadequate to accommodate the volume and character of motor-vehicle traffic to be expected if the facility becomes operational. Accordingly, the Department imposed two special provisions in the permit it issued to North Texas Services, Inc., stating that they were conditions precedent to the reception of solid waste at the site. They are as follows:

1. North Texas Services, Inc. shall upgrade the access road and bridge in compliance with Hunt County specifications and subject to the approval of the Hunt County Commissioners' Court.

2. North Texas Services, Inc. shall obtain approval from the State Department of Highways and Public Transportation for upgrading the junction of the county access road with U.S. Highway 69 which lies within that Department's right-of-way. The upgrading shall be completed to that Department's standards and so done prior to the landfill becoming operational.

In appellants' first point of error, they argue that the two special provisions amount to an unlawful "delegation" by the Department of its authority under art. 4477-7. They reason that the Department has undertaken by its regulations to determine the adequacy of such access roads. Consequently, appellants contend, the decision to issue the permit must be reversed because the effect of the special conditions is to assign to the commissioners' court and the State Department of Highways and Public Transportation a function committed by art. 4477-7 to the Department, under its own interpretation of that statute. Thus the Department decision is said to be reversible because it is in excess of the Department's statutory authority, legally erroneous, and arbitrary or capricious. Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19(e)(2), (4), (6) (Supp. 1986).

Appellants invoke a familiar rule of statutory construction that applies to those statutes wherein the Legislature constitutes administrative agencies and imbues them with governmental power to perform functions directed at the accomplishment of legislative purposes. The rule holds that where such a statute entrusts specified functions to a designated public officer or body, the Legislature presumably intends that only that officer or body shall exercise the assigned functions. In consequence of the statutory presumption, the officer or body designated by the Legislature may not "subdelegate" the assigned functions to their own employees *within* the agency, nor may they convey the assigned functions *outside* the agency to be performed by another public body, public official, or private individuals. When either kind of transfer is attempted by the public officer or body to whom a function has been entrusted, the consequences may be viewed in different ways: those making the transfer may be said to act in excess of their statutory authority; they fail to discharge the statutory duties entrusted to them by the Legislature; and the actions taken by those purportedly receiving authority to perform the functions are invalid because of *their want* of authority. *See generally, Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451 (1948); *Lufkin v. City of Galveston,* 56 Tex. 522 (1882); *Newsom v. Adams,* 451 S.W.2d 948 (Tex.Civ.App.1970, no writ); *Moody v. Texas Water Commission,* 373 S.W.2d 793 (Tex.Civ.App.1964, writ ref'd n.r.e.); *Horne Zoological Arena Co. v. City of Dallas,* 45 S.W.2d 714 (Tex. Civ.App.1931, no writ). There is, however, a corollary to the rule just set forth.

Since the principle in question is actually a presumption of statutory interpretation, it necessarily operates subject to any contrary legislative intention indicated in the statute itself. For example, the statute may contain provisions that *expressly* authorize or forbid the public officer or body to "subdelegate" or transfer a particular

function assigned to them in the statute. In such a case, the presumption does not even arise. On the other hand, the authority to "subdelegate" or transfer the assigned function may be *implied* and the presumption defeated owing to the nature of the assigned function, the makeup of the agency involved, the duties assigned to it, the statutory framework, and perhaps other matters. *See generally,* Canales v. Laughlin, *supra;* 1 Davis, *Administrative Law Treatise* §§ 3:16–18, at 216–223 (2d ed. 1978); 1 Cooper, *State Administrative Law,* ch. III, § 5, at 92–93 (1965). Closely related to these matters is the fact that in a complex society, characterized by large-scale administrative government, many public officers, bodies, and agencies supervise a variety of activities under statutes that often call for them to deal with matters in which more than one of them have authority.[1] Often, the Legislature makes specific provisions applicable to such cases. One example is found in art. 4477–7, § 4(e)(4)(A)(i) where the Legislature attempts to coordinate the respective jurisdictions of the Texas Railroad Commission, the Texas Air Control Board, and the Department, as well as "other agencies which might otherwise have jurisdiction...." We shall discuss this aspect of the problem hereafter in our consideration of art. 4477–7 and the special conditions imposed in the permit now under review.

From these general observations about the legal principles involved, we turn then to determine how and to what extent they apply in the present case.

■ We are concerned in the present case with the function of licensing; that is to say, the issuance of permits evidencing the licensee's legal right to do what would otherwise be unlawful. *Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (1946). Appellants do not contend, however, that the Department has purported to make a forbidden transfer of the entire licensing function to the other public bodies mentioned in the special conditions imposed in the permit. Rather, they contend only that a portion of that function has been transferred in contravention of the Legislature's presumed intention that it be exercised only by the Department. That portion is the evaluation of access-road adequacy as a part of the Department's general licensing function in issuing permits of the kind involved here. We must first ascertain *what* the Legislature has delegated to the Department in that regard, so that we may know the nature and scope of the presumption; then, we must determine whether, indeed, the Department has contravened the Legislative intention by the special conditions it imposed in the permit now under judicial review.

---

1. Co-equal administrative agencies may share a concurrent jurisdiction if that is the proper construction of the statutes involved. This is not an anomaly; it may even be essential to the public interest in a variety of ways. Depending on the statutes, the concurrent jurisdiction may or may not produce a *conflict* in jurisdiction. Such a conflict occurs when the statutes give the two agencies authority over the *same aspect of a single activity or thing.* Quite obviously, one or the other of the two agencies must stay its hand when this kind of jurisdiction is invoked and the law provides the governing rule:

> It is the rule of this state and practically the universal rule that, where co-ordinate jurisdiction over a particular subject matter is vested in two distinct tribunals, the tribunal first acquiring jurisdiction has the right to retain jurisdiction until it has completely disposed of all matters and issues so presented to it, and no coordinate tribunal has any right to interfere with the tribunal acquiring jurisdiction.

*State v. Baker,* 40 S.W.2d 41, 43 (Tex.1931); *see also, Mount Enterprise Indep. School Dist. v.*

*Colley,* 424 S.W.2d 650 (Tex.Civ.App.1968, no writ); *Erath County School Trustees v. Hico County Line Independent School Dist.,* 247 S.W.2d 564 (Tex.Civ.App.1952, writ ref'd); *London Indep. School Dist. v. Thomerson,* 223 S.W.2d 314 (Tex.Civ.App.1949, writ dism'd). The fact that two co-equal agencies are given jurisdiction over the same *general* subject matter does not *necessarily* result in a conflict, however, when such jurisdiction is invoked in one agency or the other. It may be that the statutes involved give the two agencies jurisdiction over *different aspects* of the same activity or thing, as discussed in the text of this opinion. In such a case, there really is no *conflict* at all in jurisdiction; and, each agency is free to exercise its assigned part of the concurrent jurisdiction without interference by the other. Indeed, the statutes involved should be *construed* in doubtful cases, so far as possible, to avoid conflicts in jurisdiction and the confusion necessarily produced thereby. *Shipley v. Floydada Independent School Dist.,* 250 S.W. 159 (Comm.App.1923).

The relevant statute is, of course, art. 4477–7. So far as we are able to ascertain, the statute does not mention specifically the matter of access roads as a factor to be considered in issuing permits of the kind in question. However, the Department's statutory authority is expressed in terms that are about as broad as they can be, for it is given "control of all aspects of municipal solid waste management" in addition to certain specific and enumerated powers, together with "all other powers necessary or convenient to carry out its responsibilities." § 3(a). With regard to the kind of permit involved in the present case, we find that the Department is authorized to "[prescribe] the form of and reasonable requirements for the permit application and the procedures to be followed in processing the application," consistent with particular permit procedures spelled out in the statute itself. § 4(e). Finally, we note the Department is authorized to impose "terms and conditions on which the permit is issued, including the duration of the permit." § 4(e)(2).

An administrative agency possesses the important responsibility of giving practical effect to such abstract statutory provisions by establishing specific criteria to guide the agency and affected persons in the matter of how an agency shall exercise a discretion committed to it. Here, the Department has enacted regulations in that regard. Chapter 325 of the Department's regulations deals with "Solid Waste Management." Within that chapter, subchapter D establishes different categories of permits; subchapter E establishes permit procedures and design criteria applicable to proposed waste-disposal sites; and subchapter F establishes operational standards for those sites.

Within subchapter E, several provisions reflect that the Department does indeed consider the matter of access roads in issuing permits of the kind in question. For example, it is required that the applicant secure a legal right to use the access road to and from a proposed facility § 325.57(a). The application must set forth the "distance in feet to the nearest public road." *Id.* The application must be accompanied by a half-scale county map prepared by the State Department of Highways and Public Transportation, showing the location of the proposed site and other matters, including the "location and type surface of all roads within one mile which will be used for entering or leaving the site...." *Id.* Similarly, the applicant must supply the Department with other information directed at the "adequacy of access roads and highways" and the "volume of vehicular traffic on access roads, both existing and expected, during the expected life of the facility." § 325.74. The application must contain an estimate "of the number, size, and maximum weight of vehicles expected to use the site daily." Finally, the application must include "provisions for all-weather access from publicly owned routes to the disposal site and from the entrance of the site to unloading areas used during wet weather...." § 325.74(b)(5)(B). We do not believe these provisions relating to access roads, to and from proposed waste-disposal sites, lie outside the rulemaking authority of the Department or outside the important legislative purposes of protecting public health and environment—purposes the Department is charged by art. 4477–7 to effectuate through its delegated rule-making and licensing powers. In any case, appellants do not make a claim that these regulations exceed the statutory authority of the Department. Indeed, they insist upon the validity of the regulations quoted above and contend the Department was bound by them to consider the matter of access roads, which it clearly did.

But to concede as much does not mean that the Department made an unauthorized transfer of its statutory functions to the other public bodies referred to in the special conditions set forth on the face of the permit and designated "conditions precedent." In the first place, the Department is specifically authorized to impose conditions in the permits it may issue, Tex.Rev. Civ.Stat.Ann. art. 4477–7, § 4(e)(2), and the imposition of such conditions may be viewed as an *exercise* of the licensing power rather than an abdication of it. *Federal Land Bank v. Board of County Comrs.,*

368 U.S. 146, 154, 82 S.Ct. 282, 287, 7 L.Ed.2d 199 (1961). The conditions imposed in a permit issued by one agency may permissibly require, before the permit becomes effective, the specified action of another agency having some authority over the thing required. For example, a permit issued by a zoning commission may be conditioned upon the action of the governmental body having authority over streets and highways; and, the commission may even specify exactly what offsite highway and traffic changes, if any, are necessary in the commission's view in order to achieve its purposes. Indeed, the commission may *not* delegate *this* determination to another governmental body. Annot., 49 ALR3rd 492, 493 (1973). The effect of such a condition is simply to declare the zoning commission's determination that the permit is not operative unless and until the condition is fulfilled, without placing upon the other governmental body any *obligation* concerning the matter. *Id.*

Next, we should consider what division of authority the Legislature has made, among public bodies, regarding the public road in question. As mentioned previously, the Department is not by any specific statutory provision required to consider access roads in its administration of art. 4477–7.

The power to consider access roads may only be implied if it exists at all. We may here assume that the quality of the access road could have some bearing upon the health and environment considerations committed to the Department's general authority by the broad terms of art. 4477–7. We make the assumption because the contrary is not contended in this appeal. Moreover, we are unwilling to say as a matter of law that the quality of the access road could have no health or environmental effect *whatever*, so that the Department was *prohibited* altogether from considering the quality of the road as a factor bearing upon the health and environmental considerations committed to the Department by art. 4477–7. That the Department possesses authority to consider the quality of the access road, from a health and environmental standpoint, in no sense deprives other public bodies of their lawful authority over the road. It is plain from a reading of other statutes that the general *transportation* aspects of the access road, being a public road, lie within the exclusive control of the State Department of Highways and Public Transportation in the one instance and within the general control of the county commissioners in the other.[2] On

---

**2.** In Tex.Const.Ann. art. XVI § 24 (1955), the Legislature is directed to "make provision for laying out and working public roads... ." The first Legislature to convene after the adoption of the Constitution enacted a statutory scheme for the establishment and maintenance of public roads solely through the commissioners courts of the several counties of the State, to whom the necessary powers, duties, and functions were delegated by the Legislature. 1876 Tex.Gen. Laws, ch. 64, at 63. By 1917, the increase in motor-vehicle traffic between distant points within the State necessitated a change and the State Highway Department, controlled by the State Highway Commission and the State Highway Engineer, was created. 1917 Tex.Gen. Laws, ch. 190, at 417, 427.

That statute called for the establishment of a system of State highways, administered by the Commission, and provided for the State to bear a portion of the cost when county commissioners established within their county a road that was designated a part of the State Highway System. *Id.*, at 420. The power of the Commission was augmented considerably in 1923 when the Legislature directed that it "take over and maintain the various highways designated 'State Highways' in the several counties...." 1923

Tex.Gen.Laws, ch. 75, at 155, 161; *see also*, 1923 Tex.Gen.Laws, 2d C.S., ch. 30, at 71. The original statutory scheme survived, however, with respect to the establishment and maintenance of "county roads," that is to say, public roads within a county which had not been designated part of the State Highway System. Tex.Rev.Civ.Stat. arts. 6673 and 6702–6716 (1925). The public roads within the jurisdiction of the commissioners courts *and* those forming part of the State Highway System belong to the State and are for the benefit of the State and its people. *Robbins v. Limestone County*, 114 Tex. 345, 268 S.W. 915 (1925).

At the present time, the statutory scheme for the control of public roads within the State is basically as follows. The State Highway System is within the *exclusive* control of the State Highway and Public Transportation Commission, exercised by it through the State Highway and Public Transportation Department. Tex.Rev. Civ.Stat.Ann. art. 6674b (1977); *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731 (1941). The State Highway System consists of those public roads within the State "included in the plan" prepared by the State Highway Engineer and designated to be part of the system. The public roads

the other hand, the *health* and *environmental* aspects of the road lie within the control of the Department.[3] This is not unusual. The Legislature often grants different public bodies authority over different aspects of the same matter. For example, in Tex.Rev.Civ.Stat.Ann. art. 911b, § 4 (1964 & Supp.1986), the Texas Railroad Commission is authorized to regulate motor carriers for several purposes, one of which is to prevent "undue burdens on the highways." This grant of authority does not diminish the authority of the State Department of Public Highways and Public Transportation or the county commissioners courts, over public roads, as the remainder of the statute expressly states. *Id.* As a result, the quality of the public roads is a matter to be considered by all of the named public bodies within their respective spheres of authority.

If the Department was authorized to consider the quality of the access roads in the present case, then it must next be inquired whether the Department in truth purported to assign to the other public bodies what the Legislature had entrusted to the Department's judgment and special knowledge—its authority to consider the *health and environmental* aspects of the road. We conclude that no such purported assignment was made by the special conditions imposed in the permit. These special conditions are essentially negative. They simply declare that there is no objection to the quality of the access road, from a health

and environmental standpoint, if it be improved so that it meets the requirements of the other public bodies based upon their evaluation of the general transportation aspects of the road. These special exceptions do not purport to require the other public bodies to consider any *health* and *environmental* aspects before giving their approval and one may not reasonably impute that meaning to them. Only if they did so would they constitute an unlawful reassignment of a function committed by art. 4477-7 *to the Department. Both* types of consideration, health and environmental on the one hand and general transportation on the other, are of vital interest to the public and require the judgment, policies, and special experience and knowledge of the public bodies to which they are respectively committed by the Legislature. *See generally,* 2 Am.Jur.2d *Administrative Law* §§ 209 and 210, at 38 (1962); 73 C.J.S. *Public Administrative Law* § 53, at 505–08 (1983).

■ We therefore conclude that the special conditions imposed in the permit do not constitute an unlawful reassignment by the Department of a function committed to it by the Legislature. In consequence, we overrule appellants' first point of error.

## THE DEPARTMENT'S FAILURE TO MAKE FINDINGS

In points of error two and four, appellants complain the Department failed to

---

within the counties of the State and not designated part of the State Highway System, lie within the *general* control of the commissioners courts of the counties under a specific grant of such power contained in Tex.Rev.Civ.Stat.Ann. art. 2351 § 5 (Supp.1986). These roads remain subject to the ultimate control of the Legislature and are not the property of the counties. Robbins v. Limestone County, *supra. See also,* Tex. Rev.Civ.Stat.Ann. art. 6702–1, § 2.002 et seq. (Supp.1986). Home-rule and general-law cities possess *exclusive* control over their public roads and streets. Tex.Rev.Civ.Stat.Ann. arts. 1175 § 16 and 1016 (1963 & Supp.1986).

**3.** Article 4477–7, § 14 provides:
Except as specifically provided in this Act, nothing in this Act diminishes or limits, or is intended to diminish or limit, the authority of the department, the commission, the Texas

Air Control Board, or local governments in performing any of the powers, functions, and duties vested in those governmental entities by other laws.
The natural implication of this broad provision is that any power, duty, or function committed to the Department must be accommodated with any analogous power, duty, or function assigned to the commissioners court of Hunt County, in the matter of public roads, including of course the access road in dispute in this appeal. That is to say, the sufficiency of the access road may be considered by the Department only with respect to the public health and environmental aspects of the road. Other provisions of art. 4477–7, make very specific and sometimes broad provision for cooperation between various other agencies and other government authorities. *See e.g.,* §§ 3(a), (d), (f), (g), (h); 4(b), (c), (e),.; 6; and 6a.

make two findings of fact that have, in appellants' view, reasonable support in the evidence. The first suggested finding of ultimate fact is "that the proposed solid waste disposal site will not be operated in compliance with the [Department's] regulations and requirements...." The second suggested finding of ultimate fact is "that the use of the proposed landfill site ... is an improper land use within the rules and regulations adopted by the" Department. We do not possess authority to reverse an agency order for its failure to find ultimate facts not required by statute. This is to be distinguished, of course, from our power to reverse an agency order and remand it to the agency for a want of substantial evidence to support findings that the agency *has* made. APTRA § 19(e)(5). Appellants have not informed us of any statutory requirements that the Department must find, before acting upon an application of the kind in question, the negative findings they suggest. In the interests of justice, we will consider the converse of appellants' contentions—that certain findings of ultimate fact made by the Department are not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole. *Id.*

■ Implicitly, the Department determined the proposed site would be operated in compliance with its regulations and requirements. In appellants' brief, they focus upon the inexperience of one of the applicant's officers in landfill operations. However, the evidence also demonstrates the experience of another corporation officer in such operations. Appellants also suggest the two officers had operated another landfill that was in violation of the Department's regulations. We may not say, as a matter of law, that these factors alone precluded the Department from reasonably concluding as it did, especially in view of the Department's ample powers regarding the proper operation of the proposed site. *See e.g.,* art. 4477–7, § 8b.

■ Implicitly, the Department also determined that the proposed facility would not constitute an improper land use. Appellants concede there is no zoning involved in the dispute but contend the "impact" of the facility upon nearby residents would be adverse and that this is a proper consideration under the Department's own regulations. *See Browning-Ferris, Inc. v. Texas Department of Health,* 590 S.W.2d 729 (Tex.App.1981, writ ref'd n.r.e.). Nevertheless, this is not the sole factor to be considered by the Department in issuing such permits, and certainly it is not the controlling factor. *Starr County v. Starr Industrial Services,* 584 S.W.2d 352 (Tex.Civ. App.1979, writ ref'd n.r.e.). The Department's final order reflects its reasoning. There was no evidence submitted regarding any incompatibility between present land use and the operation of a "technically sound landfill," nor any evidence of community growth patterns from which an adverse "impact" might be expected during the expected duration of the facility. While five nearby landowners testified that the value of their land would decline, none gave their opinion as to the present value of the land or the extent of the expected decline. In this state of the record, we cannot conclude that the Department was unreasonable in finding as it implicitly did.

We therefore overrule appellants' points of error two and four.

## FINANCIAL RESPONSIBILITY OF THE APPLICANT

Appellants complain that there existed insufficient evidence for the Department reasonably to conclude that the applicant was financially able to operate and close the facility. Like the matters discussed above in connection with appellants' points of error two and four, this complaint arises from information required of an applicant by Department regulations for a permit of the kind in question, and not to findings of fact required by a statute before a permit may issue.[4]

---

4. As originally enacted, art. 4477–7, § 4(e)(5) provided:

Before a permit is issued, extended or renewed, the state agency to which the application is submitted may require the permittee to

Section 325.74(b)(6) of the Department's regulations requires that the applicant furnish certain documents as "attachments" to his application. Among them is "attachment 13—*Evidence of financial responsibility,*" described as follows:

The applicant shall submit evidence of financial responsibility which assures the

> execute a bond or give other financial assurance conditioned on the permittee's satisfactorily closing the disposal site on final abandonment.

Tex.Gen.Laws 1971, ch. 863, at 2632. Effective September 1, 1983, the provision was amended to the form in which it existed at the time of the agency proceedings in the present case:

> Before a permit is issued, amended, extended, or renewed, the state agency to which the application is submitted may require the permittee to execute a bond or give other financial assurance conditioned on the permittee's satisfactorily operating and closing the solid waste facility. The state agency to which the application is submitted shall require an assurance of financial responsibility as may be necessary or desirable consistent with the degree and duration of risks associated with the processing, storage, or disposal of specified solid waste. Financial requirements established by the state agency shall at minimum be consistent with the federal requirements established under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, 42 U.S.C.A., 6901 et seq., as amended.

Tex.Gen.Laws.1981, ch. 831, at 3175. From its original enactment to the 1981 amendment, the subsection applied only to solid waste, if literally interpreted according to the definitions supplied by art. 4477–7, and did not apply to hazardous-waste facility permits. However, it appears that the federal statute referred to in the 1981 amendment applied *only* to the owners and operators of hazardous waste treatment, storage, and disposal facilities. *See* 42 U.S.C.A. § 6924(t) (Supp.1986). The apparent incongruity was cured by an amendment effective August 26, 1985, which resulted in the following inartful provision:

> Before a permit is issued, amended, extended, or *renewed for a solid waste facility for disposal of hazardous waste,* the state agency to which the application is submitted *shall* (~~may~~) require the permittee to execute a bond or give other financial assurance conditioned on the permittee's satisfactorily operating and closing the solid waste facility. *A state agency may condition issuance, amendment, extension, or renewal of a permit for a solid waste facility other than a solid waste facility for disposal of hazardous waste on the permittee's executing a bond or giving other financial assurance conditioned on the permittee's satisfactorily operating and closing the solid waste facility.* The state agency to which the application is submitted shall require an assurance of financial responsibility as may be necessary or desirable consistent with the degree and duration of risks associated with the processing, storage, or disposal of specified solid

> waste. Financial requirements established by the state agency shall at a minimum be consistent with the federal requirements established under the federal Solid Waste Disposal Act, as amended by the Resources Conservation and Recovery Act of 1976, 42 U.S.C., 6901 et seq., as amended.

(emphasis and parenthesis in original). We may assume, without deciding, that in the matter of hazardous-waste facility applications, the giving of financial assurance is required owing to the word "shall"; while the word "may" implies discretion in that regard when the application is for a permit pertaining to a solid-waste facility. This concerns, however, only the amended version of the statute effective August 26, 1985.

Concerning the version applicable to the present case, quoted above by citation to Tex.Gen.Laws. 1981, ch. 831, we believe the correct interpretation is that the requirement of financial assurance is a matter committed to the discretion of the Department; but before arriving at a decision in that regard and before deciding that matter and before setting the amount and nature of the assurance to be given, the Department *must* evaluate "the degree and duration of risks associated with the processing, storage, or disposal of" the waste specified in the permit. In this connection, we observe that an exhibit was admitted in evidence that computes the maintenance and closing costs estimated for the facility over the five years of expected operation, based upon numerous assumptions said to amount to a "worst case" hypothesis, and based upon soil conditions and other known considerations. The estimates reflect the opinion of a witness whose qualification as an expert are not challenged on appeal. The estimated costs total $49,579.19, a sum within the $50,000 letter of credit mentioned in the following letter from a commercial bank, which letter was addressed to the Department and received in evidence:

> \* \* \* \* \* \*
>
> Colonial Bank of Greenville is prepared to issue a letter of credit of up to $50,000.00 to the [applicant], if needed, upon approval by your department of their ... landfill, subject only to their signing the necessary documents and paying the necessary fees.
>
> \* \* \* \* \* \*

Under the statute applicable to the proceedings in the case, it was not required that the giving of financial assurance be made as a condition of the permit, as would be the case under the present version of the statute. We conclude then that the Department may pursue the matter administratively if it wishes to do so under its general supervisory powers over the operation of the facility.

department that he has sufficient assets to properly operate the site and to provide proper closure. A firm commitment to provide backup equipment by lease, purchase, or diversion from other activities is part of this responsibility. This assurance may be in the form of performance bonds, letters of credit from recognized financial institutions, company stockholder reports, trust funds, or insurance in the case of privately owned facilities and by commissioners court or city council resolution in the case of publicly owned facilities. *The department shall have the authority to require such financial responsibility as it deems appropriate.*

(emphasis added). Impliedly, the Department determined in its final order that the offer of a single letter of credit was "appropriate" for the case before it, for the order declares that the "criterion" which required the attachment was "satisfied" by the letter. In truth, there is no "substantial evidence" question presented, but rather an abuse of discretion question under APTRA § 19(e)(6) and in the interests of justice we shall consider appellants' contentions in that light.

■ The regulation in question demonstrates the Department's interest in the financial-responsibility factor. But the Department's finding that the "criterion" had been satisfied was simply a finding that this aspect of the permit-application process had been satisfied. Conceding that the Department was bound by its regulation to consider the matter of financial responsibility, we nevertheless encounter the proposition that the same regulation provides that the Department shall "require such financial responsibility as it deems appropriate." In other words, no regulation or statute gives us any objective criterion by which to measure the reasonableness of the Department's determination that the single letter of credit was sufficient for the relevant purposes. We have not been apprised by the parties concerning what factors might legally enter into a consideration of "appropriateness" under the regulation, in view of the degree and duration of the risks involved, so that we might intelligently judge whether the Department abused its discretion by accepting in satisfaction of the requirement the promise of a single letter of credit from a bank. There is no contention that the requirement has been applied unequally in substantially the same circumstances. There is no contention that a letter of credit in the amount in question is always insufficient to meet the criterion as a matter of law. In short, we cannot determine in the present state of the record *whether* the Department abused its discretion and, of course, the final order is presumed to be valid.

For the foregoing reasons, we overrule appellants' third point of error.

## NO PUBLIC NEED FOR AN ADDITIONAL FACILITY

Appellants contend in their fifth point of error that "there is no reliable and probative evidence in the record as a whole which reasonably supports the conclusion that there is need or necessity for another solid waste disposal site in" Hunt County. The Department made no finding that there existed a public need for the proposed facility; indeed, the final order rejects this as a factor bearing upon the issuance of permits under the provisions of art. 4477–7. With candor, appellants admit they have no authority for their contention. We have found none. For these reasons, we may not infer from the issuance of the permit that such a finding was impliedly made. We consequently overrule appellants' fifth point of error.

## INADMISSIBLE EVIDENCE

In their sixth and final point of error, appellants complain that the hearing examiner overruled their motion to strike from the evidence, on hearsay grounds, a contour map previously received in evidence without objection. The contour lines on the map were placed thereon by an expert witness called by North Texas Services, Inc., who had taken them from another map prepared by the United States Geological Survey. The latter was not in evidence.

The contour lines were relevant to several provisions of the Department regulations, § 325.74(b)(5)(F), that bore generally upon preventing surface-water pollution through the selection of a site for the proposed facility and its resulting design. Apparently in partial reliance on the challenged contour map, the expert witness gave his opinion, without objection, that the proposed site was a good one for its intended use as a municipal landfill. Although appellants did not then challenge the admissibility of this opinion evidence, they argue now that without the challenged contour map, the expert's testimony was rendered incompetent; and, they make the corollary contention that the hearing examiner erred in overruling their subsequent motion to strike such evidence.

Appellants' point of error may be overruled for several reasons, but we confine our reasoning to one.

■■ In our view, it lay within the discretion of the hearing examiner to overrule the motion to strike because the expert's opinion was not shown to rest *exclusively* upon the hearsay map complained of by appellants. Rather, the record reveals that it was based both upon the map and personal knowledge of the terrain and proposed facility. Moreover, the expert witness testified that the hearsay map was a source customarily relied upon by those in his field. *See generally, Moore v. Grantham,* 599 S.W.2d 287 (Tex.1980); *Lewis v. Southmore Savings Association,* 480 S.W.2d 180 (Tex.1972). We therefore overrule appellants' sixth point of error.

Finding no error as complained of by appellants, we affirm the judgment below.