

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 31, 1992

Honorable Bob Bullock
Lieutenant Governor of Texas
P. O. Box 12068
Austin, Texas 78711-2068

Honorable Mike Moncrief
Chairman
Interim Committee on
 Health and Human Services
Texas State Senate
P. O. Box 12068
Austin, Texas 78711-2068

Opinion No. DM-85

Re: Authority of the Texas Department of Health and the Texas Department of Mental Health and Mental Retardation to inspect private psychiatric facilities (RQ-269)

Gentlemen:

You request an opinion on the authority of the Texas Department of Mental Health and Mental Retardation (TDMHMR) and the Texas Department of Health (TDH) to inspect private psychiatric facilities to ensure compliance with state law and standards. The six questions you ask require us to consider several provisions relevant to hospital licensing, regulation, and inspection. These are as follows:

Health & Safety Code ch. 222, subch. B, which places certain limits on the inspection of health care facilities by state agencies;

Health & Safety Code ch. 241, the Texas Hospital Licensing Law;

Health & Safety Code ch. 571; (nonsubstantive recodification of general provisions of Texas Mental Health Code, formerly codified at V.T.C.S. arts. 5547-1 through 5547-21);

Health & Safety Code ch. 577 (nonsubstantive recodification of Texas Mental Health Code provisions on licensing private mental hospitals, formerly codified at V.T.C.S. arts. 5547-88 through 5547-99).

In addition, some of these statutes refer to titles XVIII and XIX of the Social Security Act, the federal laws that respectively establish the medicare and medicaid programs. Medicare provides for health insurance for aged and disabled persons, 42 U.S.C. § 1395 *et seq.*, while medicaid provides for grants to the states for medical assistance programs for needy individuals, 42 U.S.C. § 1396 *et seq.*; 59 TEX. JUR. 3d *Public Aid and Welfare* § 4 (1988). The Department of Human Services is the state agency designated to administer the medical assistance program. Hum. Res. Code ch. 32; 59 TEX. JUR. 3d, *supra*, § 17.

You inquire about the authority of TDH and TDMHMR to inspect certain hospitals that have already obtained a license. You state that TDMHMR and TDH have construed subchapter B of chapter 222 as significantly limiting their authority to inspect hospitals and other facilities subject to its provisions. They rely primarily on section 222.024 of the Health and Safety Code, which provides as follows:

> (a) A hospital licensed by the Texas Department of Health or the Texas Department of Mental Health and Mental Retardation is not subject to additional licensing inspections under Chapter 241 (Texas Hospital Licensing Law) or by the licensing agency while the hospital maintains:
>
> > (1) certification under Title XVIII of the Social Security Act (42 U.S.C. Section 1395 et seq.); or
> >
> > (2) accreditation from the Joint Commission on Accreditation of Health Organizations, the American Osteopathic Association, or other national accreditation organization for the offered services.
>
> (b) An agency licensing a hospital exempt from a licensing inspection under Subsection (a) shall issue a renewal license to the hospital if the hospital annually remits any applicable fees and submits a copy of the most recent inspection results report from the certification or accreditation body.

Section 222.024 thus deals with "licensing inspections" and the procedure for renewing licenses of hospitals either certified as a medicare provider[1] or accredited

---

[1]To retain certification as a medicare provider, a hospital must be inspected every 12 months. 42 C.F.R. §§ 488.3, 488.20.

by a private accrediting association.[2]  According to your letter, TDMHMR reads section 222.024 as providing that, if a hospital licensed under chapter 577 is medicare certified or accredited by an appropriate national organization, TDMHMR may enter and inspect it to enforce state law or standards only based on a complaint.  TDH contends that subchapter B deprives it of the authority to conduct an inspection of a hospital the agency licenses, with or without a complaint, after the hospital obtains an initial license under chapter 241, if the hospital is medicare certified or accredited by an appropriate national organization.

The argument is also raised that the words "additional licensing inspections," in section 222.024 refer to all inspections by the regulatory agencies for any purpose, including an inspection to evaluate the hospital's compliance with laws and rules conducted at a time when the license is not up for renewal.  This argument is based on the view that a compliance inspection is essentially an inspection for compliance with the conditions of licensing.  If violations are discovered, the hospital's license might be suspended or revoked.  Thus, compliance inspections could certainly affect a hospital's licensing status.

You believe, however, that "additional licensing inspections" refers only to those inspections required as a condition precedent to granting an initial or renewal license, and does not refer to inspections made to enforce state law and standards. The answers to your specific questions depend in large part on how the phrase "additional licensing inspections" in section 222.024 is construed.  An examination of the prior versions of this provision will help us ascertain its meaning.

When the predecessor of section 222.024 was first adopted in 1977, it read in part:

> All hospitals licensed by . . . [TDH] which have been certi-fied under Title XVIII of the Social Security Act . . . , or which have obtained accreditation from the Joint Commission on Accreditation of Hospitals or . . . the American Osteopathic Association shall not be subject to licensing inspections under the Texas Hospital Licensing Law by the agency so long as such certification or accreditation is maintained.  Such hospitals shall

---

[2]Institutions accredited as hospitals by the Joint Commission on Accreditation of Healthcare Organizations or the American Osteopathic Association are deemed to meet all of the Medicare conditions of participation for hospitals, except conditions referenced in section 488.5 of title 42 of the Code of Federal Regulations.  42 C.F.R. § 488.5.

> only be required to annually remit the statutory licensing fees in order to be issued a license by the licensing agency.

Acts 1977, 65th Leg., ch. 387, § 4(a), at 1055.

Thus, the restriction initially applied only to one agency and only to licensing inspections under one statute. After the above provision was adopted, TDH could not act under the Texas Hospital Licensing Law to inspect a hospital as a condition of licensing or license renewal if the hospital was appropriately accredited or certified. *See* Health & Safety Code §§ 241.023(a) (licensing of hospitals), 241.051 (inspection of hospitals). A hospital would no longer be subject to two annual inspection procedures -- one for licensing as a Texas hospital, and the other for certification for medicare. The purpose clause of the 1977 enactment demonstrates the legislature's intent to prevent such duplicate inspections:

> The purpose of this Act is to require that state agencies, including the Texas Department of Health Resources [TDH], the Department of Public Welfare, and those agencies with which each contracts, who perform surveys, inspections, and investigations of health care facilities, do not duplicate their procedures or subject such health care facilities to duplicitous rules and regulations.

*Id.* § 1 (now codified as Health and Safety Code section 222.021). The purpose of the legislation is to prevent duplicative inspections, not to remove all authority to inspect.

The predecessor of section 222.024 was amended in 1983. Agencies other than TDH had acquired responsibility for licensing hospitals, and coordination among these agencies was necessary to prevent duplication of effort. *See generally* House Comm. on Public Health, Bill Analysis, H.B. 2271, 68th Leg. (1983). The amended provision applied to hospitals licensed by TDH, TDMHMR, or by the Texas Commission on Alcoholism, now providing that hospitals with the appropriate accreditation or medicare certification would "not be subject to additional licensing inspections under the Texas Hospital Licensing Law ... or by the licensing agency so long as such certification or accreditation is maintained." Acts 1983, 68th Leg., ch. 1025, § 1, at 5458. Thus, the three named agencies could not perform "licensing inspections" of hospitals in addition to those necessary for the hospital to be certified for medicare or accredited by the accrediting associations.

Other provisions of chapter 222, subchapter B, implement the legislative purpose of ensuring "that agencies that perform inspections of health care facilities ... do not duplicate their procedures or subject health care facilities to duplicative rules."  Subchapter B implements this purpose in various ways.  *See* Health & Safety Code §§ 222.023(b) (a state agency is to accept an on-site inspection by another state agency if it substantially complies with first agency's inspection requirement),[3] 222.025(a) (Texas Department of Human Services, TDMHMR, and TDH to establish procedures to eliminate or reduce duplication of functions in certifying or licensing hospitals, nursing homes, or other facilities under their jurisdiction for payments under medicare and medicaid programs), 222.025(b) (TDH to coordinate licensing or certification procedures).  The prohibition in section 222.024 against the performance of "additional licensing inspections" must be read in the context of the rest of the statute, which is directed at coordinating the activities of two or more agencies that have some jurisdiction over .the same hospital.

"Inspection" is defined for purposes of subchapter B as including "a survey, inspection, investigation, or other procedure necessary for a state agency to carry out an obligation imposed by federal and state law, rules, and regulations."  *Id.* § 222.022(b).  This definition contemplates that an inspection may be performed to carry out any of the obligations imposed on the regulatory agency by federal and state law, rules, and regulations.  Section 222.024 involves a much narrower class of inspections than the class identified in the definition.  "Licensing" has been defined as "the issuance of permits evidencing the licensee's legal right to do what would otherwise be unlawful."  *Lipsey v. Texas Dep't of Health*, 727 S.W.2d 61, 65 (Tex. App.--Austin 1987, writ ref'd n.r.e.).  Issuance of such permits is only one of the obligations imposed on state agencies by federal and state laws, rules, and regulations concerning health care facilities, and it is the only obligation affected by section 222.024.  Its provision for license renewal on submission of the most recent inspection report shows that it refers to the annual inspection undertaken to determine if the license shall be continued for another year.

If section 222.024 were read to bar all inspections by TDH and TDMHMR, they would be unable to discover and correct problems that might arise at any time during the year.  Unsafe conditions in a hospital might persist undetected until the license was up for renewal.  The hospital would be accountable for compliance with the law only during the annual inspection for license renewal.  If the legislature had

---

[3]Whether an on-site inspection substantially complies with another agency's inspection requirements is a question of fact.  Attorney General Opinion JM-652 (1987).

intended to place such a drastic limit on the enforcement power of TDH and TDMHMR, we believe it would have done so expressly. We conclude that "additional licensing inspections" refers only to inspections required as a condition of receiving or renewing a license entitling the licensee to operate a hospital.

Your questions one through four are as follows:

1. During the period after a hospital governed by Chapter 241 obtains its initial license, is TDH authorized to conduct a random, unannounced inspection or program evaluation of the hospital to ensure compliance with state laws or TDH standards?

2. During the period after a hospital governed by Chapter 577 obtains its initial license, is TDMHMR authorized to conduct a random, unannounced inspection or program evaluation of the hospital to ensure compliance with state laws or TDMHMR standards?

3. During the period after a hospital governed by Chapter 241 obtains its initial license, is TDH authorized to conduct an inspection or program evaluation of the hospital based on a complaint of a violation of state law or TDH standards?

4. During the period after a hospital governed by Chapter 577 obtains its initial license, is TDMHMR authorized to conduct an inspection or program evaluation of the hospital based on a complaint of a violation of state law or TDH standards?

These questions inquire about hospitals that have already obtained an initial license. Thus, the inspections you inquire about are not licensing inspections. Section 222.024 of the Health and Safety Code, and its restrictions as to licensing inspections of hospitals certified for medicare participation or accredited by a national accrediting organization, is not relevant to these questions. You also ask about program evaluations. We assume that a program evaluation means an evaluation of the delivery of a particular category of hospital services, rather than of the hospital operation in its entirety. Defined in this way, "program evaluation" would be a type of inspection.

Chapter 241 of the Health and Safety Code, administered by TDH, governs the licensing of hospitals. Its purpose is "to protect and promote the public health and welfare by providing for the development, establishment, and enforcement of certain standards in the construction, maintenance, and operation of hospitals." Health & Safety Code § 241.002; *see id* § 241.003(4), (6), (11) (defining "hospital"). It does not apply to a facility licensed under chapter 577 of the Health and Safety Code (formerly articles 5547-88 through 5547-99, V.T.C.S.), or to one maintained or operated by the federal government, the state, or an agency of the federal or state government. *Id.* § 241.004.

Licensing procedures are set out at sections 241.021 through 241.025, in subchapter B of chapter 241. Section 241.026 provides that the Board of Health, with the advice of the Hospital Licensing Advisory Council, shall adopt and enforce rules and minimum standards to further the purposes of chapter 241. "The rules and minimum standards may relate only to" the following subjects:

(1) minimum requirements for staffing by physicians and nurses;

(2) hospital services relating to patient care; and

(3) fire prevention, safety, and sanitary provisions of hospitals.

*Id.* § 241.026(a). In addition, the board's standards may not exceed the minimum standards for certification under title XVIII of the Social Security Act. *Id.* § 241.026(b); *see also id.* § 241.027 (minimum standards for patient transfers).

Enforcement provisions are found in subchapter C. Section 241.051 provides the following:

An officer, employee, or agent of the department may enter and inspect a hospital at any reasonable time to assure compliance with or prevent a violation of this chapter.

This authority to enter and inspect exists "at any reasonable time," not merely when the hospital's license is issued or renewed. The department may begin action under the enforcement provisions when the hospital's noncompliance is discovered, and need not wait until its license is up for renewal. Thus, the department "may deny, *suspend, or revoke* a hospital's license" if the hospital has failed substantially to comply with chapter 241 or rules adopted thereunder. *Id.* § 241.053(a)(1) (emphasis

added). It may also seek a "temporary restraining order to restrain a continuing violation if the department finds that the violation creates an *immediate threat* to the health and safety of the patients of a hospital." *Id.* § 241.054(c) (emphasis added). The provisions authorizing inspection and enforcement enable TDH to act when action is needed to protect the health and safety of patients.

We answer your first and third questions in the affirmative. During the period after a hospital governed by chapter 241 has obtained its initial license, TDH is authorized by section 241.051 to conduct a random, unannounced inspection of such a hospital to ensure compliance with state laws or TDH standards, and to inspect such a hospital in response to a complaint of a violation of state law or TDH standards. Of course, the inspection must be made at a reasonable time, and TDH must determine that making the inspection is necessary to carry out its duties under chapter 241 or other relevant state and federal laws, rules, and regulations. *See id.* §§ 222.023, 241.054.

We will now address your second and fourth questions, concerning the authority of TDMHMR to inspect hospitals governed by chapter 577 of the Health and Safety Code. Chapter 577 is part of the Texas Mental Health Code, adopted in 1957. Acts 1957, 55th Leg., ch. 243, at 505; *see also* Acts 1983, 68th Leg., ch. 47, at 211 (substantive revision of Texas Mental Health Code). The Texas Mental Health Code, originally codified as articles 5547-1 through 5547-103, V.T.C.S., has been recodified as title 7, subtitle C, of the Health and Safety Code. *See* Health & Safety Code chs. 571-77. Its purpose is, in part, as follows:

> The purpose of this subtitle [Texas Mental Health Code] is to provide to each person having severe mental illness access to humane care and treatment by:
>
> (1) facilitating treatment in an appropriate setting;
>
> . . . .
>
> (7) safeguarding the person's legal rights so as to advance and not impede the therapeutic and protective purposes of involuntary care; and
>
> (8) safeguarding the rights of the person who voluntarily requests inpatient care.

*Id.* § 571.002. The provisions of the Mental Health Code are relevant to both court-ordered and voluntary hospitalization. *See* Health & Safety Code chs. 572 (Voluntary Inpatient Mental Health Services), 574 (Court-Ordered Mental Health Services).

Chapter 577 provides that no person or political subdivision may operate a mental hospital without a license issued by TDMHMR or TDH. Health & Safety Code § 577.001(a); *see also id.* §§ 577.001(b), 577.009 (referring to mental health facilities licensed by TDMHMR or TDH). A mental hospital is defined as a hospital:

> (A) operated primarily to provide inpatient care and treatment for persons with mental illness; or

> (B) operated by a federal agency[4] that is equipped to provide inpatient care and treatment for persons with mental illness.

*Id.* § 571.002(13).[5]

Section 577.005 states that TDMHMR "shall conduct an investigation as considered necessary after receiving the proper license application." This investigation is a "licensing inspection" of the kind referred to in section 222.024. The Board of Mental Health and Mental Retardation "shall adopt rules and standards the board considers necessary and appropriate to ensure the proper care and treatment of patients in a private mental hospital or mental health facility required to obtain a license under this chapter." *Id.* § 577.010; *see id.* § 571.003(12) (defining mental health facility). TDMHMR may also require a license holder to make reports and to keep records that "the department considers necessary to ensure compliance with this subtitle and the department's rules and standards." *Id.* § 577.011. Section 577.013 provides for investigations as needed to determine whether hospitals are complying with the law and the department's standards:

> (a) The department may make investigations it considers

---

[4]A mental health facility operated by TDMHMR or a federal agency is exempt from licensing under chapter 577. Health & Safety Code § 577.02.

[5]A "general hospital," in contrast to a mental hospital, is a hospital operated primarily to diagnose, care for, and treat physically ill persons. Health & Safety Code § 571.002(7).

necessary and proper to obtain compliance with this subtitle and the department's rules and standards.

(b) An agent of the department may at any reasonable time enter the premises of a private mental hospital or mental health facility licensed under this chapter to:

(1) inspect the facilities and conditions;

(2) observe the hospital's or facility's care and treatment program; and

(3) question the employees of the hospital or facility.

(c) An agent of the department may examine or transcribe any records or documents relevant to the investigation.

The department or its agent may administer oaths, receive evidence, and examine witnesses in conducting an investigation. *Id.* § 577.014; *see also id.* §§ 577.015 (department's subpoena power), 577.016 (department may deny, *suspend, or revoke* a license for noncompliance with laws or department rules). Thus, during the period after a hospital governed by chapter 577 obtains its initial license, TDMHMR has authority to conduct a random, unannounced inspection to ensure compliance with state laws and its standards, or to do so in response to a complaint about a violation of state law or the department's regulations.

Your fifth question is in three parts. The first part, question 5(a), is as follows:

Does Chapter 571 authorize TDMHMR to adopt standards with which private psychiatric facilities located within hospitals subject to Chapter 241 would be required to comply?

Chapter 571 defines "mental health facility" to include:

(C) *that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided.*

*Id.* § 571.003(12) (emphasis added).  Section 571.006 authorizes the department to:

(1) adopt rules as necessary for the proper and efficient treatment of persons with mental illness;

(2) prescribe the form and content of applications, certificates, records, and reports provided for under this subtitle;

(3) require reports from a facility administrator relating to the admission, examination, diagnosis, release, or discharge of any patient;

(4) regularly visit *each mental health facility* to review the commitment procedure for each new patient after the last visit; and

(5) visit *a mental health facility* to investigate a complaint made by a patient or by a person on behalf of a patient. (Emphasis added.)

Since a "mental health facility" includes a psychiatric facility located within a general hospital, TDMHMR has authority under chapter 571 to adopt rules setting out standards for the "proper and efficient treatment of persons with mental illness" applicable to such psychiatric facilities.

Question 5(b) is as follows:

If the answer to (a) is "yes," does Chapter 571 authorize TDMHMR to enter and inspect such a facility in response to a complaint to determine whether a violation of state law or TDMHMR standards occurred or regularly to review the facility's commitment procedures?

Section 571.006(4) and (5) authorize the department to "visit" mental health facilities for the above purposes.  In this context, "visit" means to inspect. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 2557 (3d ed. 1966).  Thus, TDMHMR has authority to enter and inspect a psychiatric facility in a private hospital to review the commitment procedure on a regular basis or to investigate a complaint.

Question 5(c) is as follows:

> If the answer to (b) is "yes," is either TDH or TDMHMR
> authorized to impose sanctions or take other enforcement action
> against such a facility if a violation of state law or TDMHMR
> standards is found?  If either or both agencies have such
> authority, what sanctions may the agency or agencies impose and
> what other enforcement actions may that agency take?

Private psychiatric facilities located within a hospital licensed by TDH under chapter 241 of the Health and Safety Code are not subject to sanctions that TDMHMR may apply to licensed mental hospitals. *See* Health & Safety Code § 577.016 (denial, suspension, or revocation of license for substantial failure to comply with department rules or the Texas Mental Health Code).  We find no authority in chapter 571 for TDMHMR to impose sanctions or take other administrative action against a facility inspected pursuant to section 571.006. Criminal penalties are provided by section 571.020 for certain conduct causing the unwarranted commitment of a person to a mental health facility, and for knowing violation of the Texas Mental Health Code.  In addition, the limitations of liability found in section 571.019 show that the legislature had in mind that individuals harmed by violation of the Mental Health Code could sue the responsible parties for damages. *See James v. Brown*, 637 S.W.2d 914 (Tex. 1982) (suit for negligent misdiagnosis-medical malpractice in connection with involuntary hospitalization); *Ramsay v. Santa Rosa Medical Center*, 498 S.W.2d 741 (Tex. Civ. App.--San Antonio 1973, writ ref'd n.r.e.), *cert. denied*, 417 U.S. 938 (1974) (denial of freedom to communicate with persons outside hospital).

As already stated in answer to your questions on the inspection of hospitals under chapter 241, TDH may enforce the provisions of that chapter and its rules and standards adopted thereunder by denying, suspending, or revoking a hospital's license, Health & Safety Code § 241.053, or seeking injunctive relief, *id.* § 241.054. However, TDH may not enforce TDMHMR standards adopted under section 571.006, unless it has adopted those standards as its own.  Section 241.026(a), which authorizes TDH to adopt rules and minimum standards relating to staffing by physicians and nurses, hospital services relating to patient care, and fire prevention, safety, and sanitary provisions of hospitals, is broad enough to authorize the adoption of specific standards for the care of the mentally ill.  Whether TDH would have authority to adopt any particular standard adopted by TDMHMR would have to be decided on a case-by-case basis.

Your final question is as follows:

> 6. Is TDH authorized to adopt and enforce standards regarding patient care, treatment and rights governing those portions of general hospitals licensed under Chapter 241 which provide treatments to persons with mental illness? If the answer is "yes," would such standards be considered to exceed the minimum Medicare standards in violation of Section 241.026(b) if Medicare statutes or rules adopted under those statutes are silent regarding the matters governed by such TDH standards?

We have already stated, in answer to question 5(c), that TDH would have authority under section 241.026(a) to adopt standards regarding patient care applicable to the portions of general hospitals that treat persons with mental illness. Whether a particular standard could be adopted under the rule-making authority in section 241.026(a) would have to be decided on a case-by-case basis. Valid standards could be enforced pursuant to sections 241.053 and 241.054.

Your final inquiry, which concerns section 241.026(b), cannot be answered as a matter of law on the basis of the information provided. Whether a particular standard would exceed the minimum standards for certification for Medicare would have to be decided on a case-by-case basis, and would require a comparison of the language and effect of a particular rule to the relevant provisions of title XVIII of the Social Security Act and the rules promulgated thereunder. Accordingly, we are unable to advise you on your last inquiry.

## S U M M A R Y

Section 222.024(a) of the Health and Safety Code, which places limits on "additional licensing inspections" of a hospital licensed by TDH or TDMHMR, applies only to inspections required as a condition for receiving or renewing a license. It does not prohibit those agencies from conducting inspections to ensure compliance with state laws or agency standards.

Chapter 571 of the Health and Safety Code authorizes TDMHMR to adopt certain standards applicable to the part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided. TDMHMR may enter such facilities to review the commitment procedure or to

investigate a complaint, but it has no authority to enforce those standards against general hospitals. TDH could enforce the TDMHMR standards if it were to adopt them as its own pursuant to section 241.026(a). Whether it may do so with respect to a particular standard can only be answered on a case-by-case basis.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General