IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-482-CV





PHILLIP SMITH, SR.; PHILLIP SMITH, SR. FAMILY; MIKE JACKSON;


HARRIS COUNTY, TEXAS; AND TEXAS WATER COMMISSION,



 APPELLANTS


vs.





HOUSTON CHEMICAL SERVICES, INC.,



 APPELLEE





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 495,506, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING



 





 After a contested-case hearing, the Texas Water Commission issued to Houston
Chemical Services, Inc., a permit to construct and operate a commercial hazardous and
nonhazardous industrial solid-waste facility. The trial court, on judicial review, affirmed the
agency order authorizing the permit. The dissatisfied parties appeal to this Court. (1) See Solid
Waste Disposal Act, Tex. Health & Safety Code Ann. § 361.001-.510 (West 1992)("Act"); (2)
Administrative Procedure Act, Act of May 4, 1993, 73d Leg., R.S., ch. 268, sec. 1,
§§ 2001.001-.902, 1993 Tex. Sess. Law Serv. 587, 737-54 (to be codified as Administrative
Procedure Act, Tex. Gov't Code Ann. §§ 2001.001-.902) (effective Sept. 1, 1993). (3) We will
affirm the trial-court judgment.



THE CONTROVERSY


 Houston Chemical applied for a permit to build the facility in Harris County near
the City of LaPorte. See Act § 361.003(3)-(4). Harris County, the City of LaPorte, Smith, the
Honorable Mike Jackson, and others appeared in the contested case in opposition to the
application. After hearing evidence and legal argument in the case, the examiner recommended
in his proposal for decision that the application be denied. See APA § 2001.062. The
Commission, however, approved the application, and in its final order directed issuance of the
permit. Smith, Jackson, and Harris County sued the Commission in a Travis County district court
as authorized by section 361.321 of the Act. Houston Chemical intervened to protect its interest
acquired under the permit.

 The trial court affirmed the Commission order after trial. This appeal ensued. 
Smith, Jackson, Harris County, and the Commission collectively bring numerous points of error. 
We will discuss these points separately or jointly as their contents suggest.



THE COMMISSION'S APPEAL


 After trial but before the district court rendered judgment, the Commission
requested leave of court to amend its preceding answer by filing a third amended original answer. 
The new pleading would have conceded several material allegations pleaded against the validity
of the agency's final order. The Commission prayed in the new pleading that the trial court,
based on these concessions, render judgment denying Houston Chemical's application for the
permit. The trial court denied leave to file the third amended original answer. See Tex. R. Civ.
P. 63. 

 In a single point of error, the Commission contends the trial court abused its
discretion. See Yowell v. Piper Aircraft Corp., 703 S.W.2d 630, 634 (Tex. 1986) (trial court
decision whether to allow trial amendment may be overturned only upon showing abuse of
discretion). Harris County makes the same contention in its points of error one and two; Smith
and Jackson complain of the ruling in their point of error 458.

 It is readily apparent that the trial court lacked authority to render judgment
denying Houston Chemical's application--the sole relief the Commission requested in its proposed
third amended original answer. The granting or denying of an application under the Act is an
executive function committed exclusively to the Commission. The terms of APA § 2001.174
empower a reviewing court merely to remand a case to the agency if it reverses an agency order
granting an application. See Davis v. City of Lubbock, 326 S.W.2d 699, 714 (Tex. 1959); Short
v. W. T. Carter & Bro., 126 S.W.2d 953 (Tex.), appeal dismissed, 308 U.S. 513 (1939); Daniel
v. Tyrell & Garth Inv. Co., 93 S.W.2d 372, 375-76 (Tex. 1936).

 In all events, the Commission's motion stated no grounds for the relief it requested;
and the agency did not explain its failure to concede before trial the invalidity of its final order. 
The agency did not contend, for example, that it had acted without jurisdiction in rendering the
order, and the agency does not make that contention now. Undoubtedly the Commission has a
continuing duty to protect the public interest, but this duty also existed at the time the agency
rendered its final order. The order is presumed to be valid in its adjudication of the public interest
and Houston Chemical's private interest that arose under the permit. The Commission was
obliged to assert some basis for its unusual action and it has not done so, either in the trial court
or in this Court. It appears to be the Commission's position in both the trial court and this Court
that the agency simply has an absolute right, as a matter of law, to obtain a reversal of its order,
cancellation of the permit, and a recall of the case for no reason at all, merely by conceding the
allegations attacking its order. We find no authority for that position and no legal error in the trial
court's action. We therefore overrule the complaint that the trial court abused its discretion. See
generally Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931 (Tex. App.--Austin 1987, no
writ); W. Wendell Hall, Revisiting Standards of Review in Civil Appeals, 24 St. Mary's L. J.
1045, 1050-53 (1993).



HEAT-SURGE VENT


 In their point of error "I.A.1," Smith and Jackson complain the Commission
violated an agency rule dealing with permit applications; Harris County raises the same complaint
in its point of error sixteen. They refer to the following:

 Houston Chemical plans to affix a heat-surge vent to the top of a rotary kiln in
which will occur the first burning of the waste materials. The vent is a safety device, designed
to open on an emergency basis to relieve pressure in the rotary kiln should the pressure rise to a
dangerous level. Secondly, both the Commission and the Texas Air Control Board (the latter was
a party in the contested case, owing to the air-quality aspects of the proposed facility) have a rule
that provides:



The owner or operator must demonstrate that the facility or unit will not cause or
contribute to a condition of air pollution as defined in the Texas Clean Air Act
(TCAA). Such demonstration shall be based on waste characteristics, emissions
estimates, and dispersion modeling and shall be submitted as part of the permit
application.



31 Tex. Admin. Code §§ 120.31, 335.367(a)(2) (1989) (emphasis added). Finally, Houston
Chemical, in its application and evidence, did not treat the heat-surge vent as a distinct and
separate emissions source; hence the company made no showing of waste characteristics,
emissions estimates, and dispersion modeling concerning the vent as an independent item. In
submitting proposed findings of fact and conclusions of law to the Commission, the Air Control
Board followed suit and did not treat the heat-surge vent as an independent emissions source. See
Act § 361.073(e)-(g).

 In its findings, the Commission included the following ultimate fact: "Potential
fugitive air emissions from the opening of the heat surge vent will not pose a threat to human
health or the environment." This conclusion rests on the following rationale expressed in the
Commission's findings of underlying fact: The vent will not open except under emergency
conditions; the likelihood of an emergency will be minimized by the design of the facility; the
waste-feed cut-off system will activate before the build-up of pressure reaches a level sufficient
to open the heat-surge vent; and a separate modeling analysis for the vent, as an independent
emissions source, is unnecessary because of the limited likelihood that the emergency heat-surge
valve will ever open; however, owing "to the location of the heat surge vent [behind] the
secondary combustion phase of the incineration system, the occurrence and nature of fugitive
emissions resulting from an opening of the heat-surge vent will be monitored." The
Commission's permit therefore requires continuous monitoring of the heat-surge vent as well as
checks at fifteen-minute intervals for any emissions that might issue from the vent. If the vent
should open, the permit requires that Houston Chemical notify the Board and the Commission
within twenty-four hours, and provide within fifteen days a written report of the incident.

 Smith, Jackson, and Harris County view as immaterial the Commission's foregoing
justification regarding the heat-surge vent. They reason that Commission rule 335.367(a)(2)
required three things: (1) that Houston Chemical demonstrate that the heat-surge vent "will not
cause or contribute to a condition of air pollution"; (2) that any demonstration in that regard must
"be based on waste characteristics, emissions estimates, and dispersion modeling" and no other
basis is sufficient for the purpose; and (3) that the demonstration must "be submitted as part of
the permit application."

 We hold there was no prejudicial error. Under the Commission's rule
335.367(a)(2) and the Air Control Board's rule 120.31, the operator "must demonstrate that the
facility or unit will not cause or contribute to" air pollution. (emphasis added). The emphasized
words are defined in a way that includes equipment components such as a heat-surge valve, indicating that the requisite demonstration may be made for the facility or unit as a whole and not
necessarily for each equipment component. See Act § 361.003(39). 

 More importantly, we believe the Commission was, in all events, free to depart
from a strict adherence to what Rule 335.367(a)(2) required. The rule consists of two parts. The
first sentence imposes a requirement of substance: "The owner or operator must demonstrate that
the facility or unit will not cause or contribute to a condition of air pollution." The second
sentence imposes a procedural requirement for meeting this substantive requirement: "[s]uch
demonstration must be based on waste characteristics, emissions estimates, and dispersion
modeling . . . submitted as part of the permit application." It is readily apparent from the face
and context of the rule that the second sentence was not intended primarily to confer procedural
benefits upon a party to the case; rather, it was manifestly intended as a procedural aid to facilitate
the Commission's decision-making as to the first or substantive element of the rule. The
Commission and the Air Control Board were therefore free to relax the "law" embodied in the
second sentence and their doing so is "not reviewable except upon a showing of substantial
prejudice to the complaining party." American Farm Lines v. Black Ball Freight Serv., 397 U.S.
532, 539 (1970)(citation omitted); Peter Raven-Hansen, Regulatory Estoppel: When Agencies
Break their Own "Laws," 64 Tex. L. Rev. 1, 23 (1985); see also Morgan Express, Inc. v.
Railroad Comm'n of Texas, 749 S.W.2d 134, 141 (Tex. App.--Austin 1987, writ denied). It does
not appear that any prejudice resulted from the Commission's chosen course of proceeding in the
case. We overrule the points of error.



FINANCIAL ASSURANCE


 Harris County, in its points of error three and four, and Smith and Jackson, in their
point of error "I.A.2," complain that the Commission made errors of law in connection with the
financial assurance that the Commission required of Houston Chemical to secure its operation and
closure of the facility according to law.

 We have set out the relevant parts of the Act in a footnote. (4) The Commission has
by rule adopted certain federal regulations pertaining to financial assurance, unless these are
clearly inconsistent with the Act. 12 Tex. Reg. 1353 (proposed) and 12 Tex. Reg. 2106 (1987)
(adopted), amended in part, 16 Tex. Reg. 5056 (proposed) and 16 Tex. Reg. 6936 (1991)
(adopted) (former 31 Tex. Admin. Code § 335.152(a)(6)). The federal regulations are found in
40 C.F.R. §§ 264.140-.169 (1992). They provide that the owner or operator of a facility must
maintain a detailed written estimate of the cost of closing the facility and give "financial
assurance" that he will close the facility in accordance with the law. 40 C.F.R. §§ 264.142(a);
§ 276.143 (1992). In giving such assurance, the operator "must choose from" the following
options: closure trust fund; surety bond guaranteeing payment into a closure trust fund; surety
bond guaranteeing performance of closure; closure letter of credit; closure insurance; financial
test and corporate guarantee for closure; use of "multiple financial mechanisms"; or use of a
financial mechanism for multiple facilities. 40 C.F.R. § 264.143 (1992). Similar assurance is
required for the post-closure care of the site. 40 C.F.R. §§ 264.144-.145 (1992). A closure-cost
estimate, upon which such assurance is based, must be adjusted annually and submitted to the
agency. 40 C.F.R. § 264.142(b) (1992).

 The federal regulations also require "financial assurance" regarding the owner's
or operator's potential liability to third parties during the course of operations. This assurance
may be provided in the form of liability insurance, a financial test, a corporate guarantee, or a
combination of a corporate guarantee and insurance. The coverage must include bodily injury and
property damage to third parties caused by sudden accidental occurrences arising from operations
of the facility, in the amount of at least $1 million per occurrence with an annual aggregate of at
least $2 million, exclusive of legal defense costs. 40 C.F.R. § 264.147(a) (1992). The coverage
must also include "bodily injury and property damage to third parties caused by nonsudden
accidental occurrences arising from operations of the facility . . . in the amount of at least $3
million per occurrence with an annual aggregate of at least $6 million, exclusive of legal defense
costs." 40 C.F.R. § 264.147(b) (1992) (emphasis added). The amounts mandated by these rules
may be reduced, however, if the owner or operator demonstrates they "are not consistent with the
degree and duration of risk associated with" the operations, a request in that regard being "treated
as a request for a permit modification." 40 C.F.R. § 264.147(c) (1992). Similarly, the agency
may adjust the required amount upward "as may be necessary to protect human health and the
environment." 40 C.F.R. § 264.147(d) (1992).

 In its final order, the Commission determined as follows:



1. Houston Chemical "will meet state and federal financial assurance
requirements for facility closure through the use of a closure trust fund as
provided in 40 C.F.R. § 264.143(a)."


2. Houston Chemical's permit requires that before receipt of any wastes the
Company must fully fund the closure trust fund in the amount of
$8,091,980.


3. Houston Chemical "will maintain liability coverage for sudden accidental
occurrences in the amount of at least $1,000,000 per occurrence with an
annual aggregate amount of at least $2,000,000, exclusive of legal defense
costs, as required by the permit and as provided in 40 C.F.R. § 264.147."



 The permit itself provides as follows:



1. Houston Chemical may not begin operations until it is in compliance "with
all financial assurance requirements and liability requirements, to include
all related [instruments] being in full force and effect"; and continued
operation of the facility is contingent upon maintenance of financial
assurance under the federal regulations described above.


2. Houston Chemical "shall provide financial assurance for closure in a form
acceptable to the Executive Director in an amount not less than $8,091,980
(representing 1988 dollars). If a closure trust fund is utilized, the permittee
shall fully fund the closure trust prior to accepting wastes for storage
and/or processing at the site."


3. "The permittee shall submit to the Executive Director upon written request
such information as may be necessary to determine the adequacy of
financial assurance."



 Harris County, Smith, and Jackson complain first that the trust-fund assurance
required of Houston Chemical does not cover operation of the facility, but only the cost of its
closure. This complaint appears to rest upon a misinterpretation of section 361.085 of the Act. 
Subsection (a) of that statute requires that the applicant demonstrate "sufficient financial resources
to operate the facility in a safe manner and in compliance with the permit and all applicable rules,
including how [the] applicant intends to obtain financing for construction of the facility, and to
close the facility in accordance with applicable rules." Act § 361.085(a) (emphasis added). 
Subsection (d) requires execution of "the required financial assurance conditioned on the permit
holder's satisfactorily operating and closing the solid waste facility." Act § 361.085(d) (emphasis
added). Thus, section 361.085 of the Act distinguishes between assurances as to the cost of
closing the facility and as to operation of the facility in a safe manner. This is the identical
distinction made in the federal regulations that the Commission has adopted as its own. It appears
to us that the Commission has clearly authorized (1) the trust fund to assure against the cost of
closing the facility and (2) liability insurance to assure against claims arising from operation of
the facility. We reject the contrary contention that section 361.085 of the Act requires a single
form of assurance encompassing both closure costs and operations liability. 

 If Harris County, Smith, and Jackson intend that assurance for safe operation of
the facility means something different from assurance against third-party liability (and this is not
apparent from their brief), then we should point out that the closure-cost estimate, upon which
financial assurance is based, "must equal the cost of final closure at the point in the facility's
active life when the extent and manner of its operation, would make closure the most
expensive[.]" 40 C.F.R. § 264.142(a)(1) (1992) (emphasis added). In other words, the manner
of operation is a factor that must be used in calculating the closure-cost estimate, and the amount
of assurance that must be given against such cost.

 Harris County, Smith and Jackson complain next that the Commission made no
findings demonstrating the "degree and duration of risks associated with" the waste-management
activities, as stated in section 361.085(f) of the Act. We have outlined above the Commission's
determinations relative to financial assurance. It is evident to us that the Commission set the
amount of the trust fund and liability insurance at the standard levels established in the federal
regulations the Commission adopted, relying upon the mechanism provided in those regulations
for periodically increasing the amounts should the "degree and duration of risks" require. These
regulation-based amounts are independent of the risks associated with any particular facility. We
see no error in this method of complying with section 361.085(f) of the Act in the case of a new
facility.

 Harris County, Smith, and Jackson complain that the Commission accepted the
standard amounts for liability insurance, as established in 40 C.F.R. § 264.147(a), a regulation
the Commission adopted. The regulation requires "at least $1 million per occurrence with an
annual aggregate of at least $2 million, exclusive of legal defense costs." Id. (emphasis added). 
Harris County, Smith, and Jackson argue that actual third-party liability claims may exceed the
amounts indicated; hence Houston Chemical was bound to demonstrate and the Commission was
bound to determine in advance the probable amount of such future claims and calculate therefrom
the required amount of liability insurance thereon. We believe it lay within the Commission's
discretion to interpret differently section 361.085 of the Act. The agency has interpreted the Act
as authorizing its employment of the system established in 40 C.F.R. § 264.147(a), coupled with
the provision in subsection (d) of that regulation which authorizes the agency to adjust the
standard level of insurance as "necessary to protect human health and the environment," based on
the agency's periodic "assessment of the degree and duration of risk associated with the ownership
or operation of the facility." 40 C.F.R. § 264.147(d) (1992). We see nothing unreasonable in
the Commission's interpretation of this part of the Act. See Stanford v. Butler, 181 S.W.2d 269,
273 (Tex. 1944) (noting that courts ordinarily adopt and uphold an administrator's construction
of a statute, provided the construction is reasonable).

 Harris County, Smith, and Jackson complain finally that the Commission has yet
to determine "the type or types of financial assurance" required of Houston Chemical under
section 361.085(a) of the Act; hence the agency order is not final and the trial court should have
sustained their motion to dismiss their lawsuit for want of jurisdiction. They base this contention
on the following statements made in the permit after it fixed the amount of financial assurance
required of Houston Chemical:



1. "If a closure trust fund is utilized, the permittee shall fully fund the closure
trust" before accepting wastes. (emphasis added).


2. Houston Chemical "shall provide financial assurance for closure in a form
acceptable to the Executive Director" of the Commission. (emphasis
added). 



 In appellants' view, the conditional sense of these statements, indicated by the
emphasized words, implies that the Commission itself never determined the type or types of
financial assurance required of Houston Chemical, but left that decision to the agency's executive
director. We reject this interpretation of the permit. The permit purported to fix the rights of the
parties under the general rules that applied to such permits. See Sunset Express, Inc. v. Gulf, C.
& S.F. Ry., 154 S.W.2d 860, 862 (Tex. Civ. App.--Fort Worth 1941, writ ref'd w.o.m.). And
we believe the terms of the permit must be construed in context, especially in light of the
Commission's decision and order evidenced by the permit. We believe it obvious that the
Commission's decision and final order plainly required utilization of a trust fund; hence the
executive director's discretion was limited accordingly. The permit language quoted above must
be understood as giving the executive director discretion as to the form of the trust fund tendered
in satisfaction of what the final order required. His discretion did not extend, in other words, to
choosing from among the types of financial assurance authorized in 40 C.F.R. § 264.143. We
believe any other construction is artificial and unreasonable.

 For the reasons given, we overrule the points of error urged by Harris County,
Smith, and Jackson concerning the matter of financial assurance.



DESIGN AND ENGINEERING


 Smith and Jackson, in their point of error "I.A.3," and Harris County in its points
of error six and thirteen, complain that the Commission made errors of law in connection with the
design and engineering aspects of the facility proposed in the Houston Chemical application.

 A Commission rule provides as follows:



Unless otherwise stated, an application for a permit to store, process, or dispose
of solid waste shall meet the following requirements.


* * * * * *



(2) Plans and specifications for the construction and operation of the facility . . .
shall be submitted. . . . The information provided shall be sufficiently
detailed and complete to allow the executive director to ascertain whether the
facility will be constructed and operated in compliance with all pertinent state
and local air, water, public health, and solid waste statutes.


* * * * * *



(7) Engineering plans and specifications submitted as part of the permit
application shall be prepared and sealed by a registered professional engineer
who is currently registered as required by the Texas Engineering Practice Act.



31 Tex. Admin. Code § 305.50(2),(7) (Supp. 1993). The Commission found: (1) "[s]ufficient
detail of design has been provided in the application and during the evidentiary hearing to
determine that the proposed incineration system is capable of functioning as represented by the
applicant and as required in the permit"; (2) "[t]he plans and specifications are sufficiently detailed
and complete to ascertain whether the facility will be constructed and operated in compliance with
all pertinent state and federal air, water, public health and solid waste standards."

 Harris County, Smith, and Jackson complain the findings are erroneous because
(1) the plans furnished by Houston Chemical, with its application, are not "construction plans";
indeed, at least one is marked "Not for Construction"; and (2) the plans accompanying the
application were not prepared by and do not bear the seal of a professional engineer, as required
by the rule quoted above.

 We have examined the application. Twenty-three documents forming a part of the
application are large drawings that pertain to the construction of the facility. We believe these
are the documents in question. Two are marked "Not for Construction." One of these is entitled
"Proposal Drawing: Rotary Kiln Incineration System," the other "Proposal Drawing: Misc. Elev.
& Sections, Rotary Kiln Incineration System." Each drawing bears what purports to be the seal
of a registered engineer, contrary to appellants' claim that they do not bear such a seal. What
then of appellants' complaint that the plans are not sufficiently detailed and complete to meet what
rule 305.50(2),(7) requires?

 Implicit in appellants' argument is a premise that subsections (2) and (7) of rule
305.50 require that construction plans have the specificity and certainty such plans ordinarily have
outside the permit process, as when an owner and builder contract for the erection of a structure
in accordance with an agreed set of plans, each having a contract right of performance according
to the agreed plans. Since two of the plans are marked "Not for Construction" in this instance,
they were therefore insufficient in appellants' view to meet what the rule requires. In other
words, the sufficiency of the plans depends entirely upon the meaning appellants have first
assigned to subsections (2) and (7) of rule 305.50. We believe the Commission was free to assign
a different meaning.

 The rule explicitly requires that the construction plans provide information
"sufficiently detailed and complete to allow the executive director to ascertain whether the facility
will be constructed and operated in compliance with all pertinent" statutes. 31 Tex. Admin. Code
§ 305.50(2) (Supp. 1993) (emphasis added). The Commission is expected to assign meaning to
its rules. We see nothing unreasonable in the meaning implicitly assigned by the Commission in
this instance--that the plans must be sufficient for the regulatory purpose indicated even though
they may not be sufficient for judging compliance with any contract under which the structures
would be built. We may not say this is an unreasonable construction, whether the rules be viewed
as "procedural," "interpretative," or "legislative." See United States v. Larionoff, 431 U.S. 864,
872 (1977); Bullock v. Hewlett-Packard Co., 628 S.W.2d 754 (Tex. 1982); Railroad Comm'n of
Texas v. Shell Oil Co., 161 S.W.2d 1022, 1027-28 (Tex. 1942).

 The result is not altered, in our view, by the terms of the Texas Engineering
Practice Act as urged by the appellants. Section 15(c) of that statute, upon which appellants rely,
provides as follows:



A public official of this state . . . charged with the enforcement of laws,
ordinances, codes, or regulations that affect the practice of engineering may only
accept plans, specifications, and other related documents prepared by registered
engineers, as evidenced by the seal of the engineer.



Tex. Rev. Civ. Stat. Ann. art. 3271a, § 15(c) (West Supp. 1994) (emphasis added).

 As mentioned previously, all the drawings do bear the seal of a registered engineer. 
Nothing in subsection 15(c) of the statute directs that a public official of this state may only accept
construction plans that are sufficiently certain to create a contract right of construction
performance in accordance therewith; nothing in the statute forbids the acceptance of preliminary
plans, for example, or plans offered for another purpose, such as regulation in this instance. The
subsection is, instead, part of a section that deals with the registration, certification, and seals of
professional engineers. Moreover, we doubt the word "accept," as used in subsection 15(c), was
intended to have the meaning appellants implicitly impute to it--that the Commission "accepts" the
plans in the contract sense of creating rights and obligations with their acceptance. Under the
regulatory scheme, the plans, specifications, and related documents submitted with the permit
application are essentially conditional and tentative and only for the purpose of initiating the
application process. Even a resulting permit, when issued, creates no privilege or property right. 
It is subject to further Commission orders imposed unilaterally by the agency. An engineer's
certification that the building complies with such permit and subsequent orders is an event that
must take place after construction and a test of the structures by a "trial burn." See 31 Tex.
Admin. Code § 305.122 (1989); 11 Tex. Reg. 272 (proposed) and 11 Tex. Reg. 2597 (1986)
(adopted), amended in part, 15 Tex. Reg. 4793 (proposed) and 15 Tex. Reg. 6017 (1990)
(adopted) (former 31 Tex. Admin. Code § 305.144); 11 Tex. Reg. 276 (proposed) and 11 Tex.
Reg. 2600 (1986) (adopted), amended in part, 15 Tex. Reg. 4794 (proposed) and 15 Tex. Reg.
6017 (1990) (adopted) (former 31 Tex. Admin. Code § 305.172). 

 We overrule the points of error.



RECOMMENDATIONS OF THE AIR CONTROL BOARD


 Harris County, in its point of error ten, and Smith and Jackson, in their point of
error "I.A.4," complain the Commission made an error of law in reaching its final decision
without a valid recommendation of the Texas Air Control Board. We should explain.

 When the Commission receives an application for a permit to construct and operate
a facility for the disposal of industrial solid waste and hazardous municipal waste, "the Texas Air
Control Board shall perform a technical review of the air quality aspects of" the application. Act
§ 361.073(a); see also Act § 361.072. On completing its technical review, the Board furnishes
its recommendations or proposed permit provisions to the Commission, and the Commission
"shall incorporate into its proposed action all recommendations or proposed permit provisions"
furnished by the Board, unless these are less stringent than certain federal requirements. Act §
361.073(c), (d). Should the "Board's proposed permit provisions conflict with provisions
proposed by the [Commission] staff, the staffs of the Board" and the Commission "shall attempt
to resolve the conflict before the [Commission's] technical review of the application ends." Act
§ 361.073(d). The Board's rules and the Commission's rules also establish this procedure. See
31 Tex. Admin. Code § 120.15(a) (Supp. 1993) & § 335.365(a) (1989).

 The Board, in making its technical review and proposals, acts neither as a tribunal
nor as a mere advisor; rather, the Board is a party in the permit proceeding before the
Commission. "If a contested case hearing is held, the . . . Board shall develop and present the
state's evidence and testimony concerning the air quality aspects of the application," and the
Commission as a party and any other party "is entitled to cross-examine any testifying witness"
from whom evidence is adduced by the Board. Act § 361.073(e). At the conclusion of the
evidence, the Board must be allowed thirty days in which to submit its proposed findings of fact
and conclusions of law, together with "permit language," to the Commission. Act § 361.073(f). 
The Commission and its hearing examiner "must accept the information submitted by the . . .
Board unless the [Commission] finds the recommendations of the . . . Board are not supported
by a preponderance of the evidence." Act § 361.073(g). Finally, the "Board may seek judicial
review of the air quality aspects of the" Commission's decision in the case. Act § 361.073(h).

 Harris County, Smith, and Jackson complain the Commission committed legal error
when it based its final decision on recommendations made by the staff of the Air Control Board
as opposed to recommendations made by the Board itself. The recommendations were enclosed
with a letter signed by "Priscilla J. Falzone, Staff Attorney, Legal Division." The letter is written
on Board stationery, headed "Texas Air Control Board," listing the Board chairman, vice-chairman, members, and executive director. The letter begins:



Enclosed for filing in the above referenced matter are the Texas Air Control Board
Staff's (TACB Staff) Proposed Findings of Fact and Conclusions of Law regarding
the air quality aspects of the subject application. . . . Copies of the Proposed
Findings of Fact and Conclusions of Law are being mailed to the other parties.



(emphasis added).

 Harris County, Smith, and Jackson argue that the Board itself never made a
recommendation to the Commission because the letter states, on its face, that the recommendations
were those of the Board's staff; hence they could not have come from the Board or its executive
director, the only authorities in whom the Act vests the power of making recommendations to the
Commission. We reject the theory.

 Section 361.075 of the Act provides "[t]he Texas Air Control Board may delegate
to its executive director the powers and duties conferred on the board under [section 361.073]," the statute that requires the Commission to incorporate in its decisions the recommendations
"submitted by the Texas Air Control Board." Section 361.075 does not refer to any specific
power or duty the Board might delegate to its executive director. Nor does any statute, so far as
we are able to find, prohibit the Board or the executive director from acting through other agency
employees. In the case of a large agency like the Board, exercising statutory powers in its own
technical field, it would be surprising if a court did not hold that the agency's statutory framework
necessarily, if implicitly, empowers the Board and executive director to delegate further, under
their ultimate control, even discretionary powers of a limited nature. See Lipsey v. Texas Dept.
of Health, 727 S.W.2d 61, 64-65 (Tex. App.--Austin 1987, writ ref'd n.r.e.). But that issue is not
before us.

 Instead, we have simply a complaint that the recommendations were not an act of
the Board or its executive director because their attorney's letter, amounting to a pleading in a
contested case, described the recommendations as being those of the Board "staff." We cannot
presume the attorney or the staff acted without authority given or ratified by the Board or the
executive director. The attorney and the staff had at least apparent authority and they purported
to act as Board employees and as Board attorney. The Board itself has not challenged their
authority to act as they did. The power to engage employees and attorneys is implicit in the
Board's statutory framework. See Texas Clean Air Act, Tex. Health & Safety Code Ann.
§ 382.002 & § 382.011 (West 1992); Terrell v. Sparks, 135 S.W. 519, 521-22 (Tex. 1911). In
these circumstances, we believe the ordinary presumption attaches to the acts of the staff and the
attorney--a presumption of regularity in official acts. See In re Laughlin, 265 S.W.2d 805, 808
(Tex.), appeal dismissed, 348 U.S. 859 (1954); Dillehay v. Texas Life Ins. Co., 107 S.W.2d 369,
370 (Tex. 1937). The presumption is rebuttable, of course, but no party has contended that the
attorney and staff acted without actual authority; certainly no party has introduced evidence to that
effect. The presumption stands unassailed. We overrule the points of error.



COMMISSIONER'S COMMENT


 Smith and Jackson contend, in their point of error "I.A.5" that the Commission
committed legal error by substituting a post-permit "trial-burn" procedure for a determination the
agency was obliged to make before issuing the permit.

 A federal rule adopted by the Commission requires the limited operation of a
facility, a "trial burn," after construction is completed. The purpose of the trial burn is to
ascertain whether the facility will actually operate as contemplated during the permitting process. 
See 40 C.F.R. § 270.62. In the meeting in which the Commission approved Houston Chemical's
application, one commissioner stated:



You know, I really feel this has been a real difficult case. This is something that,
you know, has been bothering me since when I was in the legislature as far as the
hazardous waste for a while, and I've got, you know, a lot of thoughts about this,
and I'm, you know--the only way I, as a layman, can figure out if this thing is
going to work is to do it and go through a trial burn.



From this comment, Smith and Jackson extract an inference that "the Commission abdicated a
careful pre-permit analysis of the proposed scheme and improperly rationalized that the trial burn
was the only standard against which the facility needed to be measured."

 We disagree with the inference. It is unnatural and without foundation in the
record. The record indicates without question the pre-permit analysis made by the Commission
as a party, and the numerous findings of fact and conclusions of law indicate that the Commission
as a tribunal performed its duty in determining the case based on the relevant law and the
evidence, all before issuance of the permit. The substance of the statement quoted above amounts
simply to an expression by one Commissioner regarding the difficulty of the case and the
uncertainty inherent in all estimates and predictions about future events. The second sentence of
the quotation indicates the importance of the trial burn. Nothing in the quotation indicates to a
reasoning mind a substitution of the trial burn for the statutory and rule-based criteria by which
permits are issued under the Act.

 In all events, "[t]he thought processes or motivations of an administrator are
irrelevant in the judicial determination whether the agency order is reasonably sustained by
appropriate findings and conclusions that have support in the evidence." City of Frisco v. Texas
Water Rights Comm'n, 579 S.W.2d 66, 72 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.); see
also United States v. Morgan, 313 U.S. 409 (1941). The Commission's final decision purports
to rest solely on the findings of fact and conclusions of law that accompany the decision. We
must judge the validity of the decision according to the basis upon which it purports to rest. 
Professional Mobile Home Transp. v. Railroad Comm'n of Texas, 733 S.W.2d 892, 904 (Tex.
App.--Austin 1987, writ ref'd n.r.e.). We therefore overrule the point of error.



FLOOD-PLAIN ELEMENT


 In their point of error IV.A.6, Smith and Jackson contend the Commission
committed legal error with respect to a small part of the facility premises that might fall within
a 100-year flood plain.

 Section 361.104 of the Act directs the Commission as follows:



The commission by rule shall prohibit the issuance of a permit for a new hazardous
waste management facility . . . if the facility is to be located in an area determined
to be unsuitable under rules adopted by the commission under Section 361.103
unless the design, construction, and operational features of the facility will prevent
adverse effects from unsuitable site characteristics.



(emphasis added). Section 361.103 directs that the Commission shall by rule "define the
characteristics that make [certain] areas unsuitable for a hazardous waste management facility." 
(emphasis added). The rule must include consideration of the following factors: "(1) flood
hazards; (2) discharge from or recharge to a groundwater aquifer; (3) soil conditions; (4) areas
of direct drainage within one mile of a lake used to supply public drinking water; (5) active
geological processes; (6) coastal high hazard areas, such as areas subject to hurricane storm surge
and shoreline erosion; or (7) critical habitat of endangered species." Act § 361.103(1)-(7).

 Accordingly, a Commission rule elaborates upon the foregoing in detail. The rule
includes the following provision: 

 


A storage or processing facility . . . may not be located in the 100-year flood-plain
unless it is designed, constructed, operated, and maintained to prevent washout of
any hazardous waste by a 100-year flood.



11 Tex. Reg. 450 (proposed) and 11 Tex. Reg. 2347 (1986) (adopted), amended in part, 16 Tex.
Reg. 4220 (proposed) and 16 Tex. Reg. 6070 (1991) (adopted) (former 31 Tex. Admin. Code §
335.204). Another Commission rule provides:



The commission shall not issue a permit for a new hazardous waste management
facility . . . if the facility . . . does not meet the requirements of § 334.204 of this
title (relating to Unsuitable Site Characteristics.)



 If we understand the evidence correctly, the 100-year flood-plain boundary
corresponds, in the vicinity, to the seventeen-foot contour above mean sea level. All of Houston
Chemical's tract is above the contour except for a drainage ditch. The ditch runs parallel to the
southern property line and drains to the west. The ditch traces a path between the southern
property line and a security fence to be erected about thirty-five feet from that line. The fence
will be six feet in height, made of chain link and multiple strands of barbed wire on top. The
fence will enclose all operating parts of the facility. About forty feet inside the fence will be a
rail line and a "Railcar Unloading Facility," the rail line being basically parallel to the fence. The
rail line crosses the drainage ditch at a point on the southeast corner where the line leaves the
tract.

 The Commission found as follows:



The proposed facility will be designed, constructed, operated and maintained to
prevent the washout of any hazardous waste by a 100-year flood event.


(1) No waste management units . . . will be located in the 100-year floodplain.


(2) Permit Provision II.B.29 has been modified to preclude utilization of the
proposed Railcar Unloading Area by providing:


"Notwithstanding all permit provisions to the contrary, the Railcar Unloading Area
at this facility is specifically prohibited from use unless the permittee submits
evidence as part of a major permit amendment which indicates the subject area is
either out of the 100-year floodplain or can be protected from washout by a 100-year flood."


Secondary containment at the facility, as well as the design, construction and
operational features of the facility, will preclude migration to surface water of any
waste from spills, leaks or discharges.


* * * * * *



The proposed facility will meet the federal locational standards for hazardous waste
management facilities incorporated into 31 TAC § 335.152(a)(1).


* * * * * *



The proposed facility will be designed, constructed, operated and maintained to
prevent the washout of any hazardous waste by a 100-year flood event.



(emphasis in original). From these fact findings, the Commission concluded:



The site selected for the facility, when evaluated in light of proposed design,
construction, and operational features, including secondary containment, will
prevent adverse effects from any unsuitable site characteristics and will reasonably
minimize possible contamination of surface water and groundwater and otherwise
complies with applicable siting criteria.



 Smith and Jackson contend Houston Chemical "never made any showing that its
proposed facility incorporated special design, construction or operational features that would
guard against flooding at its site." This contention is incorrect. The site plan demonstrates that
no operational equipment or activities will be situated within the drainage ditch, evidently the only
part of the tract that lies within the 100-year flood plain. Indeed, the ditch lies outside the security
fence so as to separate it from the operating parts of the facility. Additionally, the plan is replete
with various dykes as a protection even above the seventeen-foot contour. The evidence was
uncertain about where the seventeen-foot contour line existed, on the ground, near the Railcar
Unloading Facility; consequently the agency order forbade its use until the location of the contour
line was established with certainty in that part of the tract. We overrule the point of error.



FORMER COMMISSION EMPLOYEE'S PARTICIPATION


IN THE CONTESTED CASE


 Harris County, in its point of error five, and Smith and Jackson, in their point of
error "I.A.7," complain the Commission committed an error of law by allowing its former
executive director to participate in the contested case as counsel for Houston Chemical.

 Mr. Larry Soward began serving as executive director for the Commission on
September 1, 1985. On August 26, 1986, Houston Chemical filed its application for the permit
we now review. The Commission staff did not complete its technical review within the 120 days
required by agency rule. See 31 Tex. Admin. Code § 281.19(a)(1989). The staff requested that
the executive director, Mr. Soward, allow an extension of time to perform the review. See 31
Tex. Admin. Code § 281.20 (1989). The request was granted, evidently by Mr. Soward. We
cannot find in the record any documentation for the foregoing; it is taken from the 1989 testimony
given in the contested case by a Commission employee. The testimony does not indicate that
anyone opposed the extension of time. The event must have occurred in late 1986, or a date well
before August 27, 1988, when notice of the application was first published. The event also
occurred before the application was forwarded to the Commission itself for filing, setting, and the
giving of notice to persons who might be affected. See 31 Tex. Admin. Code § 281.22(a) (1989). 
In other words, the extension was given, in all likelihood, before the case had become contested.

 Mr. Soward left the Commission's employment December 4, 1987. He was
subsequently retained as counsel by Houston Chemical. In 1990, the legislature amended the Act
by adding section 361.0885 which provides:



(a) After providing an opportunity for a hearing to an applicant, the
[Commission] shall deny an application for the issuance . . . of a permit
within its jurisdiction and may not issue . . . the permit if the [Commission]
determines that a former employee:


 (1) participated personally and substantially as a former employee in the
[Commission's] review, evaluation, or processing of that application
before leaving employment with the [Commission]; and


 (2) after leaving employment with the [Commission], provided assistance on
the same application for the issuance . . . of a permit, including
assistance with preparation or presentation of the application or legal
representation of the applicant.



Act § 361.0885 (emphasis added). The amendment became effective September 6, 1990, or about
twenty months after Mr. Soward left the Commission's employment.

 We believe the Commission did not err in concluding that the application had been
properly processed, even assuming the statute applied retroactively to the case. The agency could,
in our view, reasonably conclude that Mr. Soward's participation was neither personal nor
substantial in the sense of the statute.

 Harris County, Smith, and Jackson argue to the contrary on two grounds. They
argue that merely holding the office of executive director amounts to participating in the case
"personally and substantially." We disagree with this interpretation of section 361.0885. Under
that theory, the words "personally and substantially" are drained of any actual meaning; the
provision for a hearing would be superfluous for the disqualification would be absolute and
categorical; and there is no indication in the statute that the legislature intended to make
distinctions based upon a former employee's official position. Harris County, Smith, and Jackson
argue alternatively that granting the staff its requested extension of time was a personal and
substantial participation in the case as a matter of fact. We disagree, as indicated above. The
participation was no doubt personal, but the Commission could reasonably conclude it was not
substantial in the circumstances indicated. We overrule the point of error.



FAILURE TO MAKE REQUIRED FINDINGS


 In their point of error "I.B.1," Smith and Jackson contend the Commission erred
in issuing the permit when the agency had not made findings on all requisite statutory criteria. Section 361.109(a)(1) of the Act provides "[t]he commission may grant an
application for a permit . . . for a hazardous waste management facility if it finds that . . . the
applicant has provided for the proper operation of the proposed hazardous waste management
facility." This statutory provision thus calls for an ultimate conclusion by the agency. The
agency order contains the substance of this ultimate conclusion, expressed as conclusions of law. 
For example, conclusion of law number seven states: "The proposed incinerator and associated
facilities have been designed and will be constructed, operated, and maintained in accordance with
applicable Commission and [Texas Air Control Board] regulations." Similar determinations are
expressed as conclusions of law with respect to all aspects of the proposed facility.

 Section 361.023 of the Act sets out the legislative objectives and related public
policy regarding hazardous waste by providing:



(a) To protect the public health and environment, it is the state's goal, through
source reduction, to eliminate the generation of hazardous waste to the
maximum extent that is technologically and economically feasible. Therefore,
it is the state's public policy that, in generating, treating, storing, and
disposing of hazardous waste, the following methods are preferred to the
extent economically and technologically feasible, in the order listed:


 (1) source reduction;


 (2) reuse or recycling of waste, or both;


 (3) treatment to destroy hazardous characteristics;


 (4) treatment to reduce hazardous characteristics;


 (5) underground injection; and


 (6) land disposal.


(b) Under Subsection (a)(3), on-site destruction is preferred, but it shall be
evaluated in the context of other relevant factors such as transportation
hazard, distribution of risk, quality of destruction, operator capability, and
site suitability.



Smith and Jackson argue the Commission's final order does not contain "any findings regarding
the economic and technological feasibility of alternative methods of waste treatment and disposal
of higher preference than incineration under State law"; and does not contain findings that pertain
to the various factors listed in subsection (b) of the statute.

 We observe that the legislature has required that these objectives and considerations
be effectuated generally, and left to the Commission's discretion the particulars of how to
effectuate them. There is, for example, no statutory requirement that the various factors must be
determined before a permit may issue in any contested case. Moreover, it does not appear that
a dispute existed between the parties with regard to any of the factors listed in subsections (a) and
(b) of the statute. The function of agency fact findings is to resolve factual disputes. In the
absence of a factual dispute about the indicated factors, we do not see how the Commission can
logically be faulted for failing to make fact findings.

 Accordingly, we overrule the point of error.



DECISION BASED ON NON-STATUTORY FACTORS


 Harris County, in its point of error ten, and Smith and Jackson, in their point of
error "I.B.2," complain the Commission abused its discretion by basing its decision in the case
on a non-statutory factor--a public need factor. See Public Util. Comm'n v. South Plains Elec. Co-op, 635 S.W.2d 954, 957 (Tex. App.--Austin 1982, writ ref'd n.r.e.). Consequently, they
contend, we must reverse the agency decision and remand the case to the agency. See APA
§ 2001.174(2)(F).

 The Commission determined as follows in its findings of fact:



14. There is an existing and projected demand for the proposed hazardous waste
management facility.


 (a) Incineration is a preferred waste management technology under both state
and federal legislation.


 (b) The proposed facility is intended to serve area industry.


 (c) The proposed facility will provide additional treatment capacity
necessary to meet the existing and projected demand resulting from the
implementation and promulgation of new hazardous waste regulations.



Moreover, one of the Commissioners declared in a hearing as follows:



It's also apparent that there is a need for additional incineration facilities in the
state. We see that every day really in our hazardous waste program. I think that
our capacity assurance study is in the record and all of the supporting information,
and having been involved with the preparation of that document--its an ongoing
process--I can say that from my own experience there is an [sic] need for additional
incineration and other treatment capacity in this state even after we implement what
I hope will be a very successful waste reduction program.



Another Commissioner stated as follows at the hearing: "I think there's a need for incinerators. 
I personally think that an incinerator is the way to go in hazardous waste."

 We are reluctant to attribute to the Commissioners' comments the meaning imputed
to them by Harris County, Smith, and Jackson. It appears to us that the statements refer to
incineration as a preferred method of waste disposal. Nevertheless, for the purpose of discussing
the points of error, we will assume that the Commissioners' comments and finding of fact fourteen
represent, as Harris County, Smith and Jackson claim, the imposition of a public-need
requirement that must be met before the Commission may issue a permit of the kind in dispute. 
A finding to that effect is, of course, a familiar licensing prerequisite found in a variety of
regulatory statutes.

 Shortly before the hearing in which the Commissioners spoke, and before their
decision in the case, the following amendment to the Act became effective:



(a) To protect the public health and environment, encourage economic
development, and assure the continuation of the federal funding for abandoned
facility response actions, it is the state public policy that adequate capacity
should exist for the proper management of industrial and hazardous waste
generated in this state.



Act § 361.0231(a) (emphasis added). The question of the need for a proposed facility might arise
under this statute as an issue in a permit proceeding and require the Commission's determination. 
We cannot agree, therefore, that the Commission erred to the appellants' prejudice in finding of
fact fourteen. If a dispute arose about whether the facility was necessary, the agency resolved the
issue in finding of fact fourteen; if no issue arose in that regard, then the finding is mere
surplusage. Indeed, it is difficult to understand an opposing party's prejudice when the agency
imposes an additional, non-statutory requirement upon the applicant and finds the requirement
satisfied. Cf. South Plains Elec. Co-op., 635 S.W.2d at 956-57 (losing applicant complains of
agency decision in favor of competing applicant based on non-statutory factor); Vandygriff v.
Sabine Valley Sav. & Loan Ass'n, 613 S.W.2d 523, 525-26 (Tex. Civ. App.--Austin 1981, writ
ref'd n.r.e.) (losing applicant complains of agency decision in favor of competing applicant, based
on non-statutory factor, but not shown that such was basis of agency decision); Starr County v.
Starr Indus. Servs., Inc., 584 S.W.2d 352, 356 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.)
(application denied based on non-statutory factor imposed on losing party). We find no error. 
If we are mistaken in that regard, however, we hold any error was not prejudicial. See APA §
2001.174(2).



LEGAL CRITERIA NOT IDENTIFIED IN CONCLUSIONS OF LAW


 In several "findings of fact" and conclusions of law, the Commission stated its
determination that various aspects of the application satisfied federal or state requirements. The
agency did not, however, specify the particular statute or regulation that imposed the requirement
in question. For example, the Commission determined:



The trial burn requirements specified in the application and permit satisfy state and
federal requirements and are sufficient to demonstrate whether the incinerator
system is capable of achieving applicable performance standards.



This determination is designated "finding of fact" number seventeen; however, it is patently a
conclusion of law for it declares a legal effect or consequence. Indeed, when an agency declares
a legal requirement satisfied, it necessarily states a conclusion of law. See John Powers, Judicial
Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases, 16
Tex. Tech L. Rev. 475, 476-83 (1985). 

 Harris County complains, in its point of error seven, that the Commission
committed legal error in failing to identify in its conclusions of law the particular statute or
regulation that the Commission deemed satisfied. Jackson and Smith make the same complaint
in their point of error "I.B.2." Because the Commission's determinations are all inherently
conclusions of law, the issue reduces to whether the Commission was legally required to cite each
particular statute or regulation the agency believed was satisfied, because a general reference, such
as "trial burn" requirements, was insufficient in the appellants' view.

 We find no authority for the position taken by Harris County, Jackson, and Smith. 
We cannot find that the Commission labored under a legal duty of the kind for which they
contend. Section 2001.141(d) of the APA does not impose such a duty. That statute requires a
statement of the conclusions of law upon which the agency reached its decision; and it requires
a statement of the underlying facts from which the agency inferred its conclusions of law or
"findings set forth in statutory language," but the statute does not even remotely suggest the
requirement advocated by Harris County, Jackson, and Smith. And while they imply such a
requirement exists, they cite no authority for it. Such a requirement would be impractical in our
view and contrary to the established rule that a reviewing court, in cases of substantial-evidence
review, is bound to affirm the agency order "if it is correct on any theory of law applicable to the
case, . . . whether or not the [agency] gives a correct legal reason for such order, or whether or
not it gives any reason at all therefor." Gulf Land Co. v. Atlantic Ref. Co., 131 S.W.2d 73, 84
(Tex. 1939) (distinguishing between the legal basis for an agency order and its factual basis). We
overrule the points of error.

COMMISSION'S FAILURE TO ADOPT THE HEARING EXAMINER'S


FINDINGS OF FACT AND CONCLUSIONS OF LAW


 Smith and Jackson complain in their point of error "I.B.2" that the Commission
omitted to explain its failure to adopt the findings of fact and conclusions of law proposed by the
hearing examiner. They do not, however, point to any particular fact finding or conclusion of
law; they do not suggest how they were prejudiced in the matter; and they cite no authority for
their claim of error, so that we might perhaps infer whether they complain of something involving
witness credibility, agency policy, or another relevant factor. We overrule the point of error. 
See Tex. R. App. P. 74(d), (f).



POST-HEARING INCLUSIONS IN THE PERMIT


 Smith and Jackson complain in their point of error "I.C.1" that they were denied
a hearing on several critical issues because two major provisions were included in the permit after
the hearings closed.

 The first item involves the trial-burn elements of the permit. In this connection,
Smith and Jackson refer us to the transcript of the Commissioners' hearing held, after close of the
evidence, on October 10, 1990. The record reflects the following changes ordered in the permit
after the close of the evidence:



1. An independent laboratory acceptable to the Commission must conduct the
trial-burn analyses, in lieu of Houston Chemical's doing so.


2. Each of the three phases of the trial burn must be limited to ninety-six
hours of operation, or a total of 288 hours in lieu of the 720 hours
permitted by federal regulations. After each phase, operation will cease for
a period of sixty days to allow for analyses by the approved laboratory, a
report to the Commission, and any Commission request for additional
information.


3. After the last phase, operations may commence unless the trial-burn
analyses and information indicate that the facility has not satisfied the
performance standards set in the permit, in which case the permit itself
would require the suspension of operation.



 The foregoing altered the ordinary practice in which operations might continue until
modifications of the permit had been ordered, a process that usually requires many months. 
Houston Chemical carried the burden to request and obtain modifications of the permit within the
specified period.

 Smith and Jackson do not suggest how the foregoing inclusions in the permit work
to their prejudice; the inclusions appear rather to favor their positions. Indeed, Houston Chemical
states that the provisions were included at the request of Smith and Jackson, a statement they do
not deny. We cannot find any error because the inclusions appear to be matters of administration
of the trial burn that the Commission might impose unilaterally in its discretion. Smith and
Jackson suggest, if we interpret their complaint with the utmost liberality, that the Commission
abused its discretion by not holding an evidentiary hearing with regard to the inclusions. They
do not, however, suggest how or why this failure was an abuse of discretion. That is to say, they
have shown neither error nor prejudice. We overrule the point of error. See APA §
2001.174(2)(F).

 The second item involves the financial assurances required in the permit. Smith
and Jackson contend the requirement is "open ended," apparently because it arguably authorizes
Houston Chemical to utilize something other than a trust fund as security. The requirement is not
"open ended." We have discussed the matter previously. We overrule the point of error.



NOTICE DEFECTS


 Section 361.067 of the Act, entitled "Review of Permit Applications by Other
Government Entities," requires that the Commission mail a copy of complete permit applications
to various public offices and officials. Smith and Jackson complain, in their point of error
"I.C.2," that the Commission violated this statute because a notice was insufficient. Section
361.067 does not deal with notice. However, the particulars of their complaint indicate that they
perhaps intend to complain of the alleged violation of another statutory provision. We believe
they might intend Section 361.0665 of the Act. We proceed accordingly.

 Smith and Jackson complain that Houston Chemical "failed to notify the owner or
owner of the tract of land immediately adjacent to, and west of, the property upon which the
[company] proposes to build its facility." Section 361.0665(b)(2) of the Act directs that the
published notice required by that statute include "a statement that a person who may be affected by the facility or proposed facility is entitled to request a hearing," but the statute does not require
the applicant otherwise to notify anyone other than by the indicated method of publication. In all
events, we do not comprehend how Smith and Jackson could be prejudiced by a failure to notify
another person. See APA § 2001.174(2).

 Smith and Jackson complain that Houston Chemical's application is deficient
because it "does not contain a map showing the ownership of all tracts of land near the proposed
facility," as required by 31 Tex. Admin. Code § 305.45(a)(6)(D) (1989). Smith and Jackson do
not indicate how the alleged omission prejudiced them. See APA § 2001.174(2).

 Smith and Jackson complain that Houston Chemical "was allowed to introduce
evidence concerning geologic and groundwater monitoring issues which had not been addressed
in the application and therefore never properly noticed [sic]." Again, they do not suggest how
the asserted irregularity prejudiced them. See APA § 2001.174(2).

 Finally, Smith and Jackson complain that "[t]he Commission also failed to comply
with the notice provisions of [APA § 2001.057] in that the notice of the hearing did not contain
the times and places to which the hearing could be continued." They do not suggest how they
were prejudiced, however, by the omission of which they complain in this instance. See APA §
2001.174(2).

 Aside from the terms of section 361.0665 of the Act, to which we believe they
refer, and rule 305.45(a)(6)(D), Smith and Jackson refer to no authority that imposed a duty upon
the Commission that they claim has been breached. The record indicates that notice was given
in accordance with the publication requirements of section 361.0665 of the Act; and it indicates
moreover that the owners of abutting tracts were shown on the map as section 305.45(a)(6)(D) of
the Commission's rules required. In all events, Smith and Jackson have not demonstrated the
prejudice necessary for us to reverse the agency order. We therefore overrule the point of error. 
See APA § 2001.174(2).



ACT IN EXCESS OF COMMISSION AUTHORITY


 Section 361.071 of the Act authorizes a single permit for a facility unless "a permit
is required under the new source review requirements of Part C or D, Title I, of the federal Clean
Air Act (42 U.S.C. Section 7401, et seq.) for a major source or a major modification." Act of
May 16, 1989, 71st Leg., R.S., ch. 678, § 1, Tex. Gen. Laws 2230, 2630 (Tex. Health & Safety
Code Ann. § 361.071(a) (since amended)). Smith and Jackson complain in their point of error
"I.C.3" that the Commission purported to determine the application of these federal requirements
to the proposed facility and attempted to authorize its operation when a separate permit is required
under the terms of the federal statute. Harris County raises the same contention in its point of
error eleven.

 In its conclusion of law twenty-two, the Commission determined as follows:



The proposed facility is not a major source or major modification for which a
permit would be required under the new source review requirements of Part C or
D of Title I of the Federal Clean Air Act.



Properly understood, this simply indicates the Commissioners' determination that they did not
view the federal requirements as a barrier to their issuance of the permit requested. It manifestly
was not and could not be a determination that was res judicata of the issue and therefore binding
upon the federal government. We overrule the point of error.



MISCELLANEOUS PROCEDURAL ERRORS


 In their point of error "I.C.4," Smith and Jackson complain of various other alleged
errors. They complain first that the Commission failed to include in its decision a ruling on
proposed findings of fact submitted by the City of LaPorte and Harris County. We hold Smith
and Jackson have no standing to raise this complaint and were not prejudiced by the claimed error. 
In all events, it is not shown that the proposed findings were made pursuant to a Commission rule
that required the hearing officer's permission or request before findings of fact might be proposed. 
See 13 Tex. Reg. 3584 (1988) (adopted), amended in part, 15 Tex. Reg. 6922 (1990) (proposed)
and 16 Tex. Reg. 2885 (1991) (adopted) (former 31 Tex. Admin. Code § 269.2). Section
2001.141(e) of the APA requires a ruling by the Commission on proposed findings of fact only
when these are submitted "in accordance with agency rules." The record does not demonstrate
compliance with the agency rule in this instance.

 Smith and Jackson complain next that the Houston Chemical application was not
signed and certified as required by rule 305.50(10). 12 Tex. Reg. 1300 (proposed) and 12 Tex.
Reg. 2102 (1987) (adopted), amended, 16 Tex. Reg. 6061 (1991) (adopted) (former 31 Tex.
Admin. Code § 305.50(10)). We find the application to be signed and certified in accordance with
the rule.

 Smith and Jackson complain the Commission erroneously denied a continuance
requested by Jackson based on his membership in the House of Representatives and the terms of
section 30.003(b) of the Civil Practice and Remedies Code. That statute provides as follows:



Except as provided by Subsection (c), at any time within 30 days of a date when
the legislature is to be in session, at any time during a legislative session, or when
the legislature sits as a constitutional convention, the court on application shall
continue a case in which a party applying for the continuance or the attorney for
that party is a member of the legislature and will be or is attending a legislative
session. The court shall continue the case until 30 days after the date on which the
legislature adjourns.



Tex. Civ. Prac. & Rem. Code Ann. § 30.003(b) (West 1986) (emphasis added). Subsection (a)
declares that the section "applies to any criminal or civil suit," and "any matters ancillary to the
suit." Tex. Civ. Prac. & Rem. Code Ann. § 30.003(a) (West 1986). Subsection (d) requires that
the application for continuance be supported by an affidavit filed "with the court" stating the
grounds for continuance. Tex. Civ. Prac. & Rem. Code Ann. § 30.003(d) (West 1986). The
statute clearly applies to a judicial proceeding in a "court." The parties join issue on whether the
statute also applies to a contested-case proceeding in the Commission. We hold it clearly does
not.

 The Commission is not a court. It is simply an administrative agency, exercising
executive powers in the executive branch of government, to which the legislature has delegated
power to decide issues of fact and law in enforcing statutes entrusted to the agency's
administration. The terms of APA § 2001.051-.178 require that these decisions be made, in cases
like the present, in a manner much like a court employs in adjudicating cases within its judicial
power. This similarity of method does not, however, make the agency a court in any sense. 
When an agency decides a contested case, it simply decides the application of a statute to the facts
of a case, either directly or through the medium of the agency's rules and policies, for purposes
of administrative decision-making and action. See Missouri, K. & T. Ry. of Tex. v. Shannon, 100
S.W. 138, 141 (Tex. 1907); American Sur. Co. of N.Y. v. Mays, 157 S.W.2d 444, 448 (Tex. Civ.
App.--Waco 1942, writ ref'd w.o.m.). We overrule the point of error.

 Smith and Jackson complain the Commission erred in assessing against Harris
County and the City of LaPorte a percentage of the transcription costs. Harris County raises the
same complaint in its point of error eighteen. The transcription costs totalled $29,656.36. The
Commission assessed these costs 82% to Houston Chemical, 14.31% to the City of LaPorte, and
3.67% to Harris County, based on four factors and sets of fact findings set out in the final order. 
Smith, Jackson, and Harris County argue the assessment against Harris County and the City of
LaPorte was erroneous because these entities enjoy governmental immunity from liability and, in
all events, the Commission's office of hearing examiners ordered the transcription and not they.

 Section 2001.059 of the APA provides for the transcription of proceedings on the
request of any party. "The agency may pay the cost of the transcript or assess the cost to one or
more of the parties." APA § 2001.059(b). Harris County and the City of LaPorte were, at their
own request, admitted to the proceeding as parties. We believe they thereby waived any claim
of immunity from liability. See Parker County v. Spindleton Oil & Gas Co., 612 S.W.2d 944,
949 (Tex. Civ. App.--Fort Worth 1981), aff'd in part, 628 S.W.2d 765 (Tex. 1982). Section
2001.059(b) of the APA plainly vests in the Commission power to assess the costs among the
parties admitted to the contested case. No basis is claimed or shown for holding that the
Commission's assessment was an abuse of discretion, either in the ordering of the transcription
or in the distribution made of the resulting costs. We overrule the complaint.



WANT OF SUBSTANTIAL EVIDENCE


 Smith and Jackson contend the Commission's findings of fact are not reasonably
supported by the evidence in various particulars.

 Under point of error "II.A," Smith and Jackson complain there is no evidence to
support the assumptions upon which the emissions estimates were based. They argue as follows:



(1) Houston Chemical's evidence included data from a previous study that were
not really comparable, in certain technical respects, in calculating its
estimates for NOx [sic] generation in the proposed incinerators.


(2) The "scrubbers" proposed by Houston Chemical were not proven
technology.


(3) The academic training of an expert witness who testified about the
scrubbers included only a "minor" in engineering.


(4) The data obtained from a previous owner of the incinerator were not
technically appropriate for use as contemplated by Houston Chemical.


(5) Certain data obtained by Houston Chemical from a study in Germany and
another in Louisiana were not appropriate in light of Houston Chemical's
intended equipment.



 We believe these complaints plainly are directed at the weight proper to be given
such evidence in arriving at the Commission's numerous findings pertaining to emissions
estimates. We are expressly prohibited to substitute our own "judgment for that of the agency as
to the weight of the evidence on questions committed to agency discretion." APA § 2001.174. 
We overrule the complaints.

 Under point of error "II.B," Smith and Jackson challenge the evidentiary bases of
the Commission's findings that a trust fund in the amount of $8,091,980 would satisfy Houston
Chemical's financial-assurance requirements. Specifically, they complain as follows:



(1) The Act requires consideration of the degree and duration of the risks
associated with management of the facility, and there is no evidence
regarding that factor. Act of May 16, 1989, 71st Leg., R.S., ch. 678, § 1,
1989 Tex. Gen. Laws 2230, 2634 (Tex. Health & Safety Code Ann.
§ 361.085(d), since amended).


(2) There is no evidence of the financial assurance necessary to assure
satisfactory operation of the facility.


(3) Houston Chemical has a negative net worth of about $250,000 and intends
to fund construction of the facility from the revenues it will receive by
accepting hazardous waste that it will store on the site pending completion
of the facility.


(4) The provisions of 40 C.F.R. § 264.147(a) (1992) require that Houston
Chemical "demonstrate financial responsibility for bodily injury and
property damage to third parties caused by sudden accidental occurrences
arising from operations of the facility," yet there is no evidence indicating
what the amount of such liability might be.



 We have previously set out the Commission's findings concerning the matter of
financial assurances. The four complaints brought by Smith and Jackson, as set out above, are
merely corollaries of the complaints discussed above and depend upon the same arguments we
have previously rejected. We therefore overrule the four complaints.

 In point of error "II.C," Smith and Jackson contend there is no evidentiary support
for key design aspects of the proposed incineration system. Harris County brings the same
complaint in its points of error thirteen, fourteen, fifteen and seventeen. The specific complaints
are:



(1) Houston Chemical intends to install a used fluidized-bed incinerator that is
rusting and in a state of disrepair. There is no evidence regarding Houston
Chemical's plans for refurbishing the incinerator or its ability to do so.


(2) There is no evidence regarding the physical connection between the rotary
kiln and the fluidized-bed incinerator. The sufficiency of that connection
cannot be evaluated without information demonstrating the piping
configurations, duct-work dimensions, type of turns, materials to be used,
and exactly how gases from the rotary kiln will be introduced into the
fluidized-bed incinerator.


(3) A damping system, allowing isolation of the rotary kiln from each of the
two fluidized-bed incinerators, is essential but the character of that system
is not shown in the evidence.


(4) Most of the evidence about the system consists of testimony given by
interested parties--the president of Houston Chemical and vendors of the
equipment to be used.



 We believe item four plainly requires a judgment on the weight of the evidence,
a judgment we are forbidden to make; perhaps all four require this impermissible judgment. See
APA § 2001.174. The remaining items (1), (2), and (3) have reference, in any event, to the
following determinations made by the Commission: "The proposed incinerator system, based on
its design and operational features, is capable of functioning . . . as required by applicable state
and federal regulations" and the permit; sufficient detail of design has been provided to make that
determination; the technology required by the design is proven to be effective, the only innovative
aspect being the combination of the two types of incinerator systems; the entire "system is capable
of achieving a minimum destruction removal efficiency . . . of 99.99% of the organics processed";
the permit requires continuous monitoring of twenty-eight (listed aspects) and automatic cut-off
systems (with specified "parameters"); and "[t]hose aspects of the proposed system which are
currently in existence and in need of extensive repair prior to operation are capable of
rehabilitation." (emphasis added).

 The evidence includes a drawing entitled "Proposed Waste Incinerator Equipment
Arrangement Drawing." The drawing shows a connecting duct between the rotary kiln and the
fluidized-bed incinerators. The duct is about sixteen feet in diameter and is labeled "Refractory
Lined Duct (New)." It is a straight-line connection between the rotary kiln and the fluidized-bed
incinerators. The rotary kiln itself is slanted downward toward the fluidized-bed incinerators; in
addition, the higher end of the rotary kiln has an opening labeled "Bulk Solids Feed System" and
a mechanism entitled "Ram Feeder." Another drawing included in the evidence is entitled
"Proposed Piping & Instrument Diagram: Fluidized Bed Incinerator." It shows the fluidized-bed
incinerators in section, indicating the insulation and numerous piping arrangements and pipe
dimensions for the beds in general and the connecting duct to the rotary kiln. The record also
indicates that the equipment used in the facility, whether new or used, will meet the operational
demands of new equipment. One condition of the permit is that the equipment in the facility
operate properly and without resulting in violations of applicable laws and regulations. From the
foregoing summary and other evidence in the record, we cannot conclude that the Commission's
findings are unreasonable inferences from such evidence, as we understand that evidence, much
of which is technical in nature.

 It is contended that the Commission's findings are not supported by substantial
evidence because the finding of ninety-nine percent destruction-removal efficiency requires
supporting information regarding three factors not shown in the evidence. They are (1) the
proposed length of time the waste will be in the fluidized-bed incinerators, (2) the proposed
temperature therein, and (3) the amount of oxygen proposed to burn the waste. These are not
shown, it is argued, in the evidentiary record. Expert witnesses testified, however, that the
designed incinerators would in their opinion achieve the efficiency figure indicated, given the
nature of the waste to be burned and the design and planned operations. We believe the complaint
pertains to the weight of the evidence, a matter we are forbidden to judge. See APA § 2001.174.

 Harris County complains the Commission's fact findings are not supported by
substantial evidence because of the used condition of the fluidized-bed incinerators and the want
of construction plans sufficient for erecting the structures. We have discussed these matters
previously. We believe they pertain to the weight of the evidence. APA § 2001.174. 

 Harris County also complains the Commission's findings regarding emission
predictions are without substantial evidence in support thereof because the "emission rates on
which the permit is based were . . . never admitted for the truth thereof," but only to demonstrate
how an expert witness reached his opinion. The findings were based on the opinion. In our view,
the weight of the expert's opinion evidence might well vary with the supporting information upon
which that opinion is based, but the absence of the supporting information does not deprive his
opinion of probative force; rather his opinion remains in the body of evidence from which findings
might be made by the agency. There is no contention that the opinion evidence itself is
insufficient to support the findings. We believe this complaint pertains as well to the weight of
the evidence and we may not substitute our own judgment in that regard for the judgment of the
agency. See APA § 2001.174.

 Next, Harris County complains of a want of substantial evidence to support the
Commission's findings that the estimated emissions rates were properly computed. This is so,
Harris County contends, because no technical evidence was introduced to prove the sufficiency
of the proposed packed scrubbers. A witness testified explicitly that his employer would provide
scrubbers sufficient to achieve a ninety-nine percent removal efficiency. Harris County complains
that his opinion amounts to no evidence because certain essential underlying factors were not
established by evidence: the proposed oxidizing agent, reducing agent, and height of the transfer
unit for the secondary packed scrubber. Harris County concedes these facts were included in parts
of the Houston Chemical application, but that part of the application was not introduced in
evidence. We believe the Commission could reasonably conclude that the testimony of the witness
had reference to the design and operating particulars proposed in the application when he gave his
opinion that his employer would supply scrubbers sufficient to achieve the efficiency rating
mentioned above. The application itself did not have to be introduced in evidence because it did
not tend to prove or disprove any material issue.

 Finally, Harris County complains of a want of substantial evidence to support the
Commission's findings regarding emission levels predicted in the application because no evidence
showed that the cyclone design was "viable." The Commission's findings were based on opinion
testimony given in light of the particulars of the designs and operations set out in the application. 
The complaint therefore goes to the weight of the evidence and we may not substitute our own
judgment for the expert judgment of the Commission in that regard. See APA § 2001.174.

 For the reasons given, we overrule the points of error complaining that the
Commission's fact findings are not supported by substantial evidence.



EX PARTE COMMUNICATIONS


 In a hearing held September 11, 1990, one commissioner stated:



Can you go over just a little bit the aspects of the trial burn? In the last three or
four weeks, I have asked some generic questions of our staff and went and visited
some incinerators--and just on what a trial burn really is and how it works.



 Harris County contends in its point of error eight that the Commissioner's ex parte
communications with the agency staff violated the county's due process rights under the state and
federal constitutions, and that section 2001.061 of the APA is unconstitutional in purporting to
authorize agency heads to communicate with their staff in that manner for the purpose of utilizing
the staff's special skills or knowledge in evaluating the evidence.

 The procedural rights encompassed by due process of law are generally recognized
to be as follows: notice of hearing; the opportunity to present argument and evidence and to rebut
and test opposing evidence and argument by cross-examination or other appropriate means;
appearance with counsel; and a decision by a neutral decision maker based on evidence introduced
into the record of the hearing. Bernard Schwartz, Administrative Law § 5.1 at 203 (2d ed. 1984). 
The terms of the APA establish these rights as statutory rights, irrespective of whether they are
constitutionally required. "The consequence has been a virtual judicialization of the administrative
process [and agency] procedure has acquired many of the attributes of courtroom procedure." Id. 
The fact that these rights are established by statute does not mean, however, that they are required
in every instance as a matter of constitutional due process of law. Id. at 204.

 We assume for purposes of discussion only that Harris County possessed an interest
in the litigation sufficient to invoke the constitutional guarantees of due process of law.

 We believe, nevertheless, that Harris County has not shown a violation of its
procedural rights, whether under the APA or the federal and state constitutions. There is no claim
that the Commissioner acquired facts, through his consultations, that were simultaneously (1)
outside the evidentiary record and (2) grounds for the decision made by the three Commissioners. 
See Galveston County v. Texas Dep't of Health, 724 S.W.2d 115, 124 (Tex. App.--Austin 1987,
writ ref'd n.r.e.). Harris County's position is that the mere fact that the consultations occurred
is sufficient to establish a violation of the constitutional guarantees of procedural due process of
law. We reject this theory. See Withrow v. Larkin, 421 U.S. 35, 55 (1975) (noting that State
administrators are presumed to be free of bias and "[t]he mere exposure to evidence presented in
nonadversary investigative procedures is insufficient to impugn" their fairness at an adversary
hearing). Nor can we find that section 2001.061 of the APA is unconstitutional in purporting to
authorize agency heads to consult with their staff for the purposes indicated in the statute. Larkin,
421 U.S. at 58 ("The combination of investigative and adjudicative functions does not, without
more, constitute a due process violation.").

 We overrule the point of error.



CONCLUSION


 Smith and Jackson "individually and collectively," urge on appeal 458 points of
error as reasons for reversing the Commissions' final order. These are set out in an appendix to
a brief of forty-nine pages of reduced type. Fortunately, most of the 458 points of error are
grouped for discussion in the brief, and we have followed suit in our opinion. To the extent we
have not made express reference to the 458 points of error, we hereby overrule them based on our
discussions under the groups in which they were included in the brief. We have referred to these
groups by the designations employed in the brief, such as point of error "I.A.3." 

 Finding no error in the trial-court judgment or in the Commission's final order, we
affirm the district-court judgment.




 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: January 19, 1994

Publish
1.   The appellants are Phillip Smith, Sr. and the "Phillip Smith Family," the Honorable
Mike Jackson, Harris County, and the Texas Water Commission. Mr. Jackson is a member
of the Texas Legislature. We shall hereafter refer only to Smith, Jackson, and the
Commission, in addition to Houston Chemical. We overrule the motion of Houston Chemical
to dismiss Jackson's appeal.
2.   Authority to sue the Commission is given in section 361.321 of the Act. The statute
declares that "[a] person affected by a ruling, order, decision, or other act of the . . .
commission may appeal [sic] the action by filing a petition in the district court of Travis
County"; and "the issue is whether the action is invalid, arbitrary, or unreasonable." Act
§ 361.321(a), (e). This statute is about as poorly written as it could possibly be. To render
it understandable, and to protect against its possible violation of the separation-of-powers
mandate of the Constitution of the State of Texas, we construe subsection (a) as authorizing
suits for judicial review in a district court of Travis County in accordance with APA §
2001.001-.902. We believe subsection (b) was intended to incorporate the entire scope of
review allowed by APA §§ 2001.171-.174; we infer as much from the words "invalid" and
"unreasonable." These words seem to us to imply the applicability of APA § 2001.174(2)(A)-(E) as well as § 2001.174(2)(F).
3.   Effective September 1, 1993, the Administrative Procedure and Texas Register Act
("APTRA") was incorporated into the Government Code, without substantive changes, and
renamed the Administrative Procedure Act.
4.   The Act provides as follows in § 361.085:


(a) Before a permit may be issued, . . . the commission shall require as a part
of each application information it deems necessary to demonstrate that an
applicant has sufficient financial resources to operate the facility in a safe
manner and in compliance with the permit and all applicable rules,
including how an applicant intends to obtain financing for construction of
the facility, and to close the facility in accordance with applicable rules.


 . . . .


(c) Before a permit may be issued, amended, extended, or renewed for a solid
waste facility . . . , the commission shall determine the type or types of
financial assurance that may be given by the applicant to comply with rules
adopted by the commission requiring financial assurance.


(d) Before hazardous waste may be received . . . at a solid waste facility for
which a permit is issued, . . . the commission shall require the permit
holder to execute the required financial assurance conditioned on the permit
holder's satisfactorily operating and closing the solid waste facility.


 . . . .


(f) The [commission] shall require an assurance of financial responsibility as
may be necessary or desirable consistent with the degree and duration of
risks associated with the processing, storage, or disposal of specified solid
waste.


(g) Financial requirements established by the agency must at a minimum be
consistent with the federal requirements established under the federal Solid
Waste Disposal Act, as amended by the Resource Conservation and
Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).